**PAN AMERICAN GRAIN MFG. CO., INC., Petitioner,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Respondent.**

No. 95–1780.

United States Court of Appeals, First Circuit.

Heard May 9, 1996.

Decided Sept. 6, 1996.

Romano A. Zampierollo–Rheinfeldt, Hato Rey, PR, for petitioner.

Banumathi Rangarajan, Trial Attorney, U.S. Department of Justice, Environmental Defense Section, with whom Lois J. Schiffer, Assistant Attorney General, Washington, D.C., Joseph A. Siegel, Assistant Regional Counsel, U.S. Environmental Protection Agency, Toledo, OH, and Michael Prosper, Office of General Counsel, U.S. Environmental Protection Agency, were on brief, for respondent.

Before CYR, Circuit Judge, COFFIN and BOWNES, Senior Circuit Judges.

CYR, Circuit Judge.

Petitioner Pan American Grain Manufacturing Company, Inc. presents two claims on appeal. First, it challenges the United States Environmental Protection Agency's ("EPA") November 1991 designation of the Municipality of Guaynabo, Puerto Rico ("Guaynabo"), as a nonattainment area under the National Ambient Air Quality Standards ("NAAQS") promulgated by the EPA pursuant to the Clean Air Act, 42 U.S.C. §§ 7401–7671q ("CAA"). Second, petitioner contests the EPA's May 1995 approval of a revised State Implementation Plan ("SIP") issued by the Commonwealth of Puerto Rico, which banned further use of clamshell devices in grain removal operations to ensure attainment of the NAAQS $PM_{10}$ standard prescribed for Guaynabo. We conclude that the first claim is time-barred and reject the second claim on the merits.

## BACKGROUND

The CAA was enacted "to protect and enhance the Nation's air quality, to initiate and accelerate a national program of re-

search and development designed to control air pollution, to provide technical and financial assistance to the States in the execution of pollution control programs, and to encourage the development of regional pollution control programs." *Conservation Law Found., Inc. v. Busey,* 79 F.3d 1250, 1256 (1st Cir.1996) (citing 42 U.S.C. § 7401(b) (1988)). In furtherance of these objectives, the EPA promulgated NAAQS, which prescribe, *inter alia,* maximum allowable concentration levels of fine particulate matter with an aerodynamic diameter not greater than a nominal ten micrometers ("PM$_{10}$"). *See* 42 U.S.C. § 7409(a); *see also id.* § 7407(d)(4)(B). The CAA requires States to develop and maintain implementation plans for achieving compliance with the NAAQS. *See id.* § 7410(a). Accordingly, each State, as well as the Commonwealth of Puerto Rico ("Commonwealth"), is required to submit for EPA approval a SIP which specifies the manner in which compliance with NAAQS is to be achieved. *See id.* § 7407; *American Auto. Mfr. Ass'n. v. Commissioner, Mass. Dept. of Environmental Protection,* 31 F.3d 18, 21 (1st Cir.1994); *Sierra Club v. Larson,* 2 F.3d 462, 464 (1st Cir.1993). A region that has not attained compliance with NAAQS is designated a "nonattainment" area, *see* 42 U.S.C. § 7407(d)(1)(A), which imposes upon the State the obligation to include more stringent provisions in its SIP. *See id.* § 7513.

Under the 1990 amendments to the CAA, by operation of law, Guaynabo became a designated nonattainment area for PM10, based upon NAAQS violations which had occurred prior to January 1, 1989. *See id.* §§ 7407(d)(4)(B), 7513(a); 56 Fed.Reg. 11,-105. Accordingly, on March 15, 1991, the EPA published notice in the *Federal Register* announcing its initial designation of Guaynabo as a "moderate" nonattainment area for PM$_{10}$. *See* 42 U.S.C. § 7502(a)(1) (permitting EPA to "classify" nonattainment areas). On November 6, 1991, the EPA issued a final rule codifying its PM$_{10}$ nonattainment designation for Guaynabo. *See id.* § 7407(d)(2); 56 Fed.Reg. 56,694.

Thereafter, the Puerto Rico Environmental Quality Board ("EQB") conducted a pub-lic hearing and received comments on a proposed SIP revision which would achieve PM$_{10}$ compliance in Guaynabo. On November 14, 1993, the EQB submitted its SIP revision to the EPA; in March of 1994, it supplemented the revised SIP. On August 11, 1994, the EPA published for comment its proposed full approval of the SIP revision. *See* 59 Fed. Reg. 41,265. On May 31, 1995, after conducting public meetings and evaluating the comments received, including those submitted by petitioner, the EPA approved the revised SIP and published notice of its approval and promulgation. *See* 60 Fed.Reg. 28,333. The instant petition for review was filed on July 28, 1995.

## DISCUSSION

A petition to review a final EPA action must be filed in the appropriate court of appeals within sixty days after notice of the action appears in the *Federal Register.* *See* 42 U.S.C. § 7607(b)(1); *e.g., Harrison v. PPG Indus., Inc.,* 446 U.S. 578, 588–92, 100 S.Ct. 1889, 1895–97, 64 L.Ed.2d 525 (1980). Appellate review is governed by the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), and substantial deference is accorded final agency actions, which will not be set aside unless " 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.' " *Citizens Awareness Network, Inc. v. United States Nuclear Reg. Comm'n,* 59 F.3d 284, 290 (1st Cir.1995) (citations omitted); *Puerto Rico Sun Oil Co. v. EPA,* 8 F.3d 73, 77 (1st Cir.1993). The deference due "is magnified when the agency interprets its own regulations." *Puerto Rico Aqueduct & Sewer Auth. v. EPA,* 35 F.3d 600, 604 (1st Cir.1994) (citing *Arkansas v. Oklahoma,* 503 U.S. 91, 111–12, 112 S.Ct. 1046, 1059–60, 117 L.Ed.2d 239 (1992)).

We inquire whether the challenged EPA action was based on the wrong factors or whether there has been a clear error in judgment. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971). Although searching and careful, review under the 'arbitrary and capricious' standard is narrow in scope. *See Adams v. EPA,* 38 F.3d 43, 49 (1st Cir.1994). Moreover, we are not

empowered to substitute our judgment for that of the agency. *See id.; Caribbean Petroleum Corp. v. EPA*, 28 F.3d 232, 234 (1st Cir.1994) (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983)).

## I

■ Petitioner's challenge to the EPA's 1991 designation of Guaynabo as a $PM_{10}$ nonattainment area is time-barred, *see* 42 U.S.C. § 7607(b)(1) (prescribing 60–day period), since the petition for review was filed in July 1995, three and one-half years after the designation. Consequently, we lack appellate jurisdiction. Petitioner attempts to circumvent the time-bar by claiming that the 1991 $PM_{10}$ nonattainment designation did not constitute "final agency action" for purposes of judicial review under 42 U.S.C. § 7607(b)(1), but became final in May 1995 when the EPA approved the revised SIP issued by the Commonwealth. Petitioner's interpretation lacks supporting authority and conflicts with the plain language of the statute.

In its 1990 amendments to the CAA, Congress directed the EPA to publish notice in the *Federal Register* announcing nonattainment designations under 42 U.S.C. § 7407(d)(4)(B). *See id.* § 7407(d)(2)(A). On November 6, 1991, the EPA published its $PM_{10}$ nonattainment designation for Guaynabo, thereby constituting its designation a final EPA action *in accordance with its terms:* "today's codification of the initial designations for $PM_{10}$ in 40 CFR part 81 represents *final agency action* for the purpose of section 307(b) of the CAA [42 U.S.C. § 7607(b)(1).]" 56 Fed.Reg. 56,706 (emphasis added). Cases in other circuits likewise indicate that such nonattainment designations constitute final agency action. *See Dressman v. Costle*, 759 F.2d 548, 553 (6th Cir.1985); *City of Seabrook v. EPA*, 659 F.2d 1349, 1370 (5th Cir. 1981) ("We think that the designations [as NAAQs' nonattainment areas] were 'final actions' subject to immediate, direct review under [42 U.S.C. § 7607(b)(1)] when they were promulgated."), *cert. denied*, 459 U.S. 822, 103 S.Ct. 51, 74 L.Ed.2d 57 (1982);

*United States Steel Corp. v. EPA*, 595 F.2d 207, 211, *clarified*, 598 F.2d 915 (5th Cir. 1979). *See also United States Steel Corp. v. EPA*, 605 F.2d 283, 290 (7th Cir.1979) (assuming, without discussion, that designations [of NAAQS nonattainment areas] were open to immediate judicial review), *cert. denied*, 445 U.S. 939, 100 S.Ct. 1332, 63 L.Ed.2d 773 (1980). We believe this to be both a permissible construction of the statute, *see Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984), and, from an administrative efficiency perspective, entirely rational. As the required SIP revision process itself is protracted, it is not irrational to conclude that Congress did not intend that it be further extended indefinitely. *See, e.g., FTC v. Standard Oil Co.*, 449 U.S. 232, 243, 101 S.Ct. 488, 495, 66 L.Ed.2d 416 (1980) ("final agency action" status designed to promote "administrative efficiency"). Petitioner's counterargument that Congress intended to defer judicial review until the revised SIP has been promulgated is untenable, since it misconstrues the plain language of the statute and misapprehends the equally clear intent of Congress. *Cf. Garcia v. Cecos Int'l Inc.*, 761 F.2d 76, 79 (1st Cir.1985) (plain language of 42 U.S.C. § 6972(b), requiring sixty days' notice before commencement of "private citizen" suit is "not a technical wrinkle or superfluous formality that federal courts may waive at will ... [but] part of the jurisdictional conferral from Congress that cannot be altered by the courts.").

As the EPA points out, Congress well understood how to defer review had that been its intent. Indeed, it specifically provided for deferred judicial review of *classifications* of $PM_{10}$ nonattainment areas until agency action has been taken on the SIP or any SIP revision. *Compare* 42 U.S.C. § 7502(a)(1)(B) *with* § 7407(d)(2)(B); *see also supra* p. 103. Thus, the absence of a similar deferment for nonattainment *designations* affords confirmation that these EPA actions were meant to be subject to immediate review. We therefore conclude that the PM10 nonattainment designation for Guaynabo became a final agency action for purposes of judicial review upon its publication by EPA in the *Federal Register* as directed in

the 1990 CAA amendments.[1] Thus, the petition for review is time-barred.

## II

■ Petitioner next claims that it was "arbitrary and capricious" to approve the revised SIP issued by the EQB. Since the revised SIP comports with the statutory requirement for ensuring attainment of the NAAQS for $PM_{10}$ in a moderate nonattainment area, this claim fails on the merits.

■ Congress has mandated various SIP criteria as prerequisites to EPA approval. *See* 42 U.S.C. §§ 7410, 7513(a) and (b). The CAA generally allows States considerable latitude in determining how to meet these SIP criteria. *See Train v. Natural Resources Defense Council, Inc.*, 421 U.S. 60, 65, 79, 87, 95 S.Ct. 1470, 1475, 1481–82, 1485–86, 43 L.Ed.2d 731 (1975). In the instant case, the revised SIP submitted by the Commonwealth won EPA approval following an agency review for completeness and a finding that it reasonably ensured $PM_{10}$ attainment in Guaynabo.

Petitioner contends that the EPA failed to provide adequate responses to its objections to EPA's assessment of $PM_{10}$ violations, its "modeling" of grain processing operations, and the resulting RACT/RACM ("reasonably available control technology/reasonably available control measures") requirements. We do not agree.

In each instance the EPA presented reasoned explanations for approving the revised SIP notwithstanding petitioner's objections. *See* 60 Fed.Reg. 28,335–37. Moreover, petitioner's criticisms, which go to the heart of the EPA's approval methodology, involve areas in which "EPA's 'expertise is heavily implicated,' and we may not substitute our judgment for that of the Administrator." *Mision Industrial, Inc. v. EPA*, 547 F.2d 123, 129 (1st Cir.1976) (citations omitted).

Following a thorough review of the record, and careful consideration of petitioner's claims, we are not persuaded that petitioner has demonstrated "arbitrary and capricious" agency action which would warrant disturbing EPA's approval and promulgation of the revised SIP. *See Citizens to Preserve Overton Park, Inc.*, 401 U.S. at 415, 91 S.Ct. at 823.

***The petition for review is denied.***

---

1. Petitioner's argument that the EPA "reopened" its nonattainment designation during the SIP revision process is without merit. Petitioner cannot revive its time-barred claim by soliciting an EPA response to petitioner's comment challenging the designation, especially since the EPA in this case simply reiterated its original position. *See, e.g., American Iron and Steel Institute v. EPA*, 886 F.2d 390, 398 (D.C.Cir.1989) (permitting such bootstrapping would be contrary to congressional efforts to secure prompt and final review of agency decisions; petitioner cannot goad agency into replying, then claim agency "reopened" issue), *cert. denied*, 497 U.S. 1003, 110 S.Ct. 3237, 111 L.Ed.2d 748 (1990).