152 F.3d 196
 46 ERC 2096, 28 Envtl. L. Rep. 21,491
 AMERICAN AUTOMOBILE MANUFACTURERS ASSOCIATION and
Association of International Automobile
Manufacturers, Inc., Plaintiffs-Appellants,
v.
John P. CAHILL, Acting Commissioner of the New York State
Department of Environmental Conservation, and
Dennis C. Vacco, Attorney General of the
State of New York, Defendants-Appellees.
 Docket No. 97-7972.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 10, 1997.
Decided Aug. 11, 1998.
 
 Phillip A. Lacovara, Mayer, Brown & Platt, New York City (Norman R. Williams II, Mayer, Brown & Platt; Edward W. Warren, Stuart A.C. Drake, Gary E. Marchant, Kirkland & Ellis, Washington, DC; Phillip D. Brady, V. Mark Slywynsky, American Automobile Manufacturers Association; Charles H. Lockwood, John T. Whatley, Association of International Automobile Manufacturers, Inc., of counsel) for Plaintiffs-Appellants.
 James M. Tierney, Assistant Attorney General of the State of New York, New York City (Dennis C. Vacco, Attorney General; Barbara G. Billet, Solicitor General; Peter H. Schiff, Deputy Solicitor General; Lisa M. Burianek, Assistant Attorney General, of counsel) for Defendants-Appellees.
 Jed R. Mandel, Neal, Gerber & Eisenberg, Chicago, Illinois (Timothy A. French, of counsel) for amicus curiae Engine Manufacturers Association in support of Plaintiffs-Appellants.
 Lois R. Phillips, Helm, Shapiro, Anito & McCale, P.C., Albany, New York (Lawrence F. Anito, Jr., of counsel) for amici curiae New York State Automobile Dealers, Inc. and National Automobile Dealers Association in support of Plaintiffs-Appellants.
 Paul A. Crotty, Corporation Counsel of the City of New York, New York City (Stephen J. McGrath, Susan E. Amron, Marjorie L. Fox, of counsel) for amicus curiae City of New York in support of Defendants-Appellees.
 Frederick D. Augenstern, Assistant Attorney General of the Commonwealth of Massachusetts (Scott Harshbarger, Attorney General; William L. Pardee, Assistant Attorney General, of counsel) for amicus curiae Commonwealth of Massachusetts in support of Defendants-Appellees.
 John W. Caffry, Glens Falls, New York (Louise G. Roback, of counsel) for amici curiae Environmental Advocates, Natural Resources Defense Council, American Lung Association, and Natural Resources Council of Maine in support of Defendants-Appellees.
 Before: WINTER, Chief Judge, and McLAUGHLIN, Circuit Judge.*
 WINTER, Chief Judge:
 
 
 1
 The American Automobile Manufacturers Association and the Association of International Automobile Manufacturers, Inc. (collectively, the "Manufacturers") appeal from Judge Kahn's dismissal of their action challenging New York's requirement that sales of zero-emission vehicles ("ZEVs") comprise a certain percentage of new-light-duty-vehicle sales in New York for model years 1998-2002. The district court granted summary judgment against them on their claim that the Clean Air Act preempts New York's ZEV sales requirement.
 
 
 2
 We agree with the Manufacturers that the ZEV sales requirement is a "standard relating to the control of emissions" and is therefore preempted by Section 209 of the Clean Air Act. We also agree with the Manufacturers that the ZEV sales requirement does not fall within Section 177's exception allowing other states to promulgate emissions standards identical to standards adopted by California. See 42 U.S.C. §§ 7543, 7507.
 
 
 3
 We therefore reverse.
 
 BACKGROUND
 
 4
 The present action is the latest chapter in a dispute over New York's new-light-duty-vehicle emissions standards. See Motor Vehicle Mfrs. Ass'n v. New York State Dep't of Envtl. Conservation, 810 F.Supp. 1331 (N.D.N.Y.1993) ("MVMA I "); Motor Vehicle Mfrs. Ass'n v. New York State Dep't of Envtl. Conservation, 831 F.Supp. 57 (N.D.N.Y.1993) ("MVMA II "); Motor Vehicle Mfrs. Ass'n v. New York State Dep't of Envtl. Conservation, 17 F.3d 521 (2d Cir.1994) ("MVMA III "); Motor Vehicle Mfrs. Ass'n v. New York State Dep't of Envtl. Conservation, 869 F.Supp. 1012 (N.D.N.Y.1994) ("MVMA IV "); Motor Vehicle Mfrs. Ass'n v. New York State Dep't of Envtl. Conservation, 79 F.3d 1298 (2d Cir.1996) ("MVMA V "). We briefly sketch the facts leading up to the current appeal. A more comprehensive discussion can be found in MVMA III, 17 F.3d at 524-31.
 
 
 5
 Under Section 209 of the Clean Air Act,[1] exclusive control over "standard[s] relating to the control of emissions from new motor vehicles" is vested in the federal government, and the states are preempted from regulating in the area. See 42 U.S.C. § 7543(a). However, the statute provides an exception for California, the only state that regulated new-vehicle emissions prior to the original Clean Air Act. See id. § 7543(b). Under that exception, California is permitted to adopt and enforce its own new-vehicle emissions standards, provided that it first obtains a waiver from the Environmental Protection Agency ("EPA"). See id. Although California alone is given the opportunity to apply for such a waiver under the Act, Section 177 of the Act contains an "opt-in" provision that allows any other state to "adopt and enforce for any model year standards relating to control of emissions from new motor vehicles" if "such standards are identical to the California standards for which a waiver has been granted for such model year" and are adopted "at least two years before commencement of such model year."[2] 42 U.S.C. § 7507.
 
 
 6
 In 1990, California adopted new regulations designed to reduce vehicle emissions. The regulations established, inter alia, a system under which new vehicles are classified into different low-emission categories according to the amount of pollution they emit ("LEV program"). Under the California regulations, the average emissions from the mix of the different vehicles sold in California by a given manufacturer in a given year must comply with an overall "fleet average" emissions standard. However, manufacturers have the flexibility to decide how many vehicles within each low-emission category they will produce and sell. Manufacturers can also meet the fleet average requirement through the use of credits, which can be obtained by producing more low-emission vehicles than required for a particular model year or which can be purchased directly from other manufacturers. The only limitation on the flexibility accorded manufacturers is a sales quota imposed for one category of vehicles, ZEVs. Under the regulations, two percent of all new vehicles certified for sale in California for model years 1998-2000, five percent for model years 2001-2002, and ten percent for model year 2003 were required to be ZEVs. The EPA approved California's plan and granted it the requisite waiver on January 7, 1993.
 
 
 7
 In 1992, New York adopted California's LEV program for light-duty vehicles pursuant to the Clean Air Act's opt-in provision. See MVMA III, 17 F.3d at 529-30; 6 N.Y.C.R.R. Part 218. New York's classification system, fleet average requirements, and ZEV sales requirements were identical, with one exception, to those of California for model years 1998-2003. That exception concerned medium-duty vehicles, which were included in California's ZEV requirements but not in New York's. We upheld the New York regulations in the face of a claim that they were preempted, holding that New York's LEV program fell within the "opt-in" provision of Section 177. See MVMA III, 17 F.3d at 532-33.
 
 
 8
 California's classification system and fleet average requirements are still, with one exception, in force for model years 1998-2002. The exception is that California has abandoned the ZEV sales requirement for model years 1998-2002. It has replaced the ZEV sales requirement for those years in part with individual Memorandums of Agreement ("MOAs") with the seven largest automobile manufacturers, requiring specific numbers of ZEVs to be sold during calendar years 1998-2000.
 
 
 9
 The Manufacturers brought the present action challenging New York's ZEV sales requirement for model years 1998-2002 as preempted under the Clean Air Act. The district court rejected the Manufacturers' argument, holding that the ZEV sales requirement is not a "standard relating to control of emissions," but rather an "enforcement mechanism" not covered by the preemption provision of the Clean Air Act. American Auto. Mfrs. Ass'n v. Cahill, 973 F.Supp. 288, 307-08 (N.D.N.Y.1997).
 
 
 10
 This appeal followed.
 
 DISCUSSION
 
 11
 The Manufacturers contend that the sales requirement for model years 1998-2002 is a "standard relating to the control of emissions" and is therefore subject to preemption under Section 209 of the Clean Air Act. They further argue that, because California has eliminated the ZEV sales requirement for the model years in question, New York's ZEV sales requirement is no longer within Section 177's exception for standards "identical to the California standards for which a waiver has been granted."
 
 
 12
 We first address the question left open in MVMA III, 17 F.3d at 536, namely, whether the ZEV sales requirement is a "standard relating to the control of emissions" and therefore within Section 209's preemptive scope, or whether, as the district court held, it is an enforcement procedure and therefore not preempted.[3] See Motor & Equip. Mfrs. Ass'n v. EPA, 627 F.2d 1095, 1113 (D.C.Cir.1979) (enforcement mechanisms not a "standard" for purposes of Section 209). This issue, which involves the application of a federal statute to state regulations, is a matter of law that we review de novo.
 
 
 13
 We view "standards relating to the control of emissions" as describing regulatory measures intended to lower the level of auto emissions, while "enforcement mechanisms" describe regulatory devices intended to ensure that the "standards" are effective. For example, the LEV Program is clearly a "standard," whereas periodic testing and maintenance requirements are "enforcement mechanisms." Although this distinction, like the distinction between substance and procedure, can be less than a bright line in some cases, we find it of relatively easy application in this matter.
 
 
 14
 To be sure, the ZEV sales requirement does not impose precise overall quantitative limits on levels of emissions, as do the classification system and fleet averages. It mandates only that a specified percentage of the cars sold by a manufacturer in any model year be ZEVs. Nevertheless, the ZEV sales requirement must be considered a standard "relating to the control of emissions." ZEV, after all, stands for "zero-emission vehicle," and a requirement that a particular percentage of vehicle sales be ZEVs has no purpose other than to effect a general reduction in emissions. Indeed, the EPA has noted that "the ZEV sales requirement clearly will have a beneficial effect on emissions of evaporative hydrocarbons and tailpipe emissions of No subX from vehicles in the LEV program" independent of the fleet averages. The ZEV sales requirement is, therefore, in the nature of a command having a direct effect on the level of emissions, rather than in the nature of a means of enforcing, or testing the effectiveness of, a command.
 
 
 15
 Because the ZEV sales requirement is within the preemptive scope of Section 209, the next question is whether it falls within Section 177's exception for standards identical to those adopted by California. The Manufacturers argue that, because California no longer has a ZEV sales requirement, New York's ZEV sales requirement violates the "identicality" requirement of Section 177. As noted, states that wish to "opt-in" under Section 177 are required by that provision to adopt and enforce regulations that mirror California standards that are the subject of an EPA waiver. The Manufacturers contend that, when California amended its regulations regarding ZEV sales, "opt-in" states had to follow California's lead.
 
 
 16
 The issue has not received much attention in the course of this litigation because the focus has been on whether New York's ZEV sales requirement is a "standard" under Section 209, as the district court held. Apart from a meritless argument that the Manufacturers have waived this claim,[4] New York has not, on this appeal, directly responded to the implications of California's abandonment of its ZEV requirement. Indeed, the parties seem to have assumed that, if New York's ZEV requirement is a Section 209 "standard," then it is preempted. We agree with that assumption.
 
 
 17
 We construe unambiguous statutes in accordance with their plain language. See Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). The language here seems plain enough. Opt-in states must adopt and enforce standards that are "identical to the California standards for which a waiver has been granted for [a particular] model year...." 42 U.S.C. § 7507. To be sure, an EPA waiver was granted for a California ZEV sales requirement. However, for another state to opt-in under Section 177, a standard must not only be the subject of a waiver but must also be a "California standard." In this case, the ZEV sales requirement is no longer a California standard for the model years in question.[5] Moreover, even if we viewed the language as ambiguous, the logic of the provision and its legislative history support the view that the Section 177 exception is available to the 49 other states only when a standard identical to an existing California standard is adopted.
 
 
 18
 In the original Clean Air Act, Congress exempted California from federal preemption. The exception for California was in recognition of the fact that it, alone among the states, already had a regulatory scheme in place and that it faced special air pollution problems. The exception, however, was limited to California, in recognition of the burden on commerce that would result from allowing other states to set their own individual emissions standards. See H.R. Rep. No. 95-294, at 309 (1977), reprinted in 1977 U.S.C.C.A.N. 1077, 1388.
 
 
 19
 In 1977, Congress decided to amend the exception for California to allow other states "to adopt and enforce new motor vehicle emission standards which are identical to California's standards." Id. at 310, 1977 U.S.C.C.A.N. at 1389. The legislative history is clear that, under the broadened exception, "States are not authorized to adopt or enforce standards other than the California standards." Id. Finally, in recognition of the size of California's economy and demand for autos, Congress concluded that "[t]his new State authority should not place an undue burden on vehicle manufacturers who will be required, in any event, to produce vehicles meeting the California standards for sale in California." Id.
 
 
 20
 If other states may adopt a "California standard" that is not in force in California, the consequences will be wholly at odds with congressional intent. First, under such a scheme, the Manufacturers will not "be required, in any event, to produce vehicles meeting the California standards for sale in California." Id. Instead, they might have to produce vehicles meeting the requirements of a single, much smaller state. Second, the Manufacturers might be required to comply with more than two--perhaps several--sets of emissions regulations. See Commonwealth of Virginia v. EPA, 108 F.3d 1397, 1401 (D.C.Cir.1997) ("[T]here are two [federal and California], and only two, permissible sets of regulations limiting emissions from new cars sold in the United States."). Indeed, New York's ZEV sales requirement does not apply to medium-duty vehicles, as did the original California requirements. See note 3, supra. Were we to uphold New York's ZEV sales requirement under Section 177, then a third state might adopt ZEV sales requirements as to medium-duty vehicles, as California did originally, leading to at least four different regulatory schemes: federal, California, New York, and the third state.
 
 
 21
 We also regard the existence of MOAs between California and the Manufacturers as irrelevant. With or without the MOAs, California has still abandoned its ZEV sales requirement for model years 1998-2002. Other states cannot opt-in to a California standard that no longer exists. If Congress desires to allow other states to impose California's MOAs as their own regulations, legislation permitting that and describing the preconditions to such regulation will be necessary.[6]
 
 
 22
 We hold, therefore, that New York's ZEV sales requirement is preempted by Section 209 of the Clean Air Act and reverse. In view of our disposition of this matter, we need not reach the other arguments raised by the Manufacturers.
 
 
 
 *
 Judge Van Graafeiland, who was originally a member of the panel, recused himself prior to oral argument. The appeal is being decided by the remaining two members of the panel, who are in agreement. See 2d Cir. R. § 0.14(b); Murray v. NBC, 35 F.3d 45, 46-47 (2d Cir.1994)
 
 
 [1]
 Section 209 provides in pertinent part:
 (a) Prohibition
 No State or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines subject to this part. No State shall require certification, inspection, or any other approval relating to the control of emissions from any new motor vehicle or new motor vehicle engine as condition precedent to the initial retail sale, titling (if any), or registration of such motor vehicle, motor vehicle engine, or equipment.
 (b) Waiver
 (1) The Administrator shall, after notice and opportunity for public hearing, waive application of this section to any State which has adopted standards (other than crankcase emission standards) for the control of emissions from new motor vehicles or new motor vehicle engines prior to March 30, 1966, if the State determines that the State standards will be, in the aggregate, at least as protective of public health and welfare as applicable Federal standards. No such waiver shall be granted if the Administrator finds that--
 (A) the determination of the State is arbitrary and capricious,
 (B) such State does not need such State standards to meet compelling and extraordinary conditions, or
 (C) such State standards and accompanying enforcement procedures are not consistent with section 7521(a) of this title.
 42 U.S.C. § 7543.
 
 
 [2]
 Section 177 provides:
 Notwithstanding section 7543(a) of this title, any State which has plan provisions approved under this part may adopt and enforce for any model year standards relating to control of emissions from new motor vehicles or new motor vehicle engines and take such other actions as are referred to in section 7543(a) of this title respecting such vehicles if--
 (1) such standards are identical to the California standards for which a waiver has been granted for such model year, and
 (2) California and such State adopt such standards at least two years before commencement of such model year (as determined by regulations of the Administrator).
 Nothing in this section or in subchapter II of this chapter shall be construed as authorizing any such State to prohibit or limit, directly or indirectly, the manufacture or sale of a new motor vehicle or motor vehicle engine that is certified in California as meeting California standards, or to take any action of any kind to create, or have the effect of creating, a motor vehicle or motor vehicle engine different than a motor vehicle or engine certified in California under California standards (a "third vehicle") or otherwise create such a "third vehicle".
 42 U.S.C. § 7507.
 
 
 [3]
 The Manufacturers also argue that, even if the ZEV sales requirement is an "enforcement mechanism," it is still preempted by Section 209. Because we hold that the requirement is a "standard," we need not address this argument
 
 
 [4]
 New York's ZEV sales requirement's lack of identicality to an existing California standard was mentioned in the Manufacturers' complaint and, as conceded by New York's brief on this appeal, was also mentioned in the Manufacturers' response to the motion for summary judgment in the district court
 
 
 [5]
 In 1997, the California Air Resources Board ("CARB") determined that the LEV program, even without the ZEV sales requirement for model years 1998-2002, is still more protective of public health than applicable federal standards and that the repeal of the ZEV sales requirement for these model years therefore fell within the scope of the waiver under Section 209(b). Although the EPA has not yet officially approved CARB's finding, the fact is that California is not enforcing the 1998-2002 ZEV sales requirement. Such requirement is, therefore, no longer a "California standard."
 
 
 [6]
 We do not decide whether the MOAs are preempted by the Clean Air Act. We only note that, preempted or not, they cannot be adopted by other states under the opt-in provision