ASSOCIATION OF INTERNATIONAL
AUTOMOBILE MANUFACTURERS,
INC., Daimlerchrysler Corporation,
Ford Motor Company, General Motors
Corporation and Massachusetts State
Automobile Dealers Association, Inc.,
Plaintiffs, Appellees,

v.

COMMISSIONER, MASSACHUSETTS
DEPARTMENT OF ENVIRONMEN-
TAL PROTECTION, Defendant, Ap-
pellant.

Alliance of Automobile Manufacturers;
Association of International Automo-
bile Manufacturers, Inc., Petitioners,

v.

United States Environmental
Protection Agency,
Respondent.

Commonwealth of Massachusetts,
Intervenor.

Nos. 98–1036, 99–2245.

United States Court of Appeals,
First Circuit.

Heard May 8, 1998.
Decided March 27, 2000.

**2**

Thomas F. Reilly, Attorney General of Massachusetts and William L. Pardee, Assistant Attorney General, Environmental Protection Division on supplemental brief, for the Massachusetts Department of Environmental Protection.

Edward W. Warren, Robert R. Gasaway, Jeffrey Bossert Clark, Daryl Joseffer, Kirkland & Ellis, Robert F. Sylvia, Eric F. Eisenberg, Hinckley, Allen & Snyder, Julie C. Becker and Charles H. Lockwood on supplemental brief, for Alliance of Automobile Manufacturers, Association of International Automobile Manufacturers, Inc., DaimlerChrysler Corporation, Ford Motor Company and General Motors Corporation.

Before TORRUELLA, Chief Judge, CYR, Senior Circuit Judge, and STAHL, Circuit Judge.

TORRUELLA, Chief Judge.

These consolidated appeals present an important issue of federal preemption under the Clean Air Act. Pursuant to § 177 of that act, the Commonwealth of Massachusetts adopted a set of automobile emission standards in 1993. Plaintiff-appellees (the "Manufacturers") brought suit claiming that the Massachusetts regulations were preempted by the Clean Air Act. While that action was pending, Massachusetts amended its standards, and the Manufacturers amended their complaint. The district court eventually held for the Manufacturers, and Massachusetts appealed to this Court (No. 98–1036). Invoking the primary jurisdiction doctrine, we referred a number of questions to the Environmental Protection Agency for its views. *See American Auto. Mfrs. Ass'n v. Massachusetts Dep't of Envt'l Protection*, 163 F.3d 74 (1st Cir.1998) (*"AAMA V"*). The resulting EPA opinion gave rise to its own litigation, which was transferred to this Court (No. 99–2245) and consolidated with the original appeal. Now, after some delay and procedural confusion (for which we accept some, perhaps most, of the responsibility), we dismiss the petition for review in No. 99–2245 and affirm the district court's decision in No. 98–1036, holding that the Massachusetts regulations at issue are preempted by the Clean Air Act.

## I. Regulatory, Factual, and Procedural Background

The factual background and procedural stance of the Manufacturers' original appeal, No. 98–1036, are set forth in detail in the district court's opinion of October 15, 1997, *see American Auto. Mfrs. Ass'n v. Commissioner, Mass. Dep't of Envt'l Protection*, 998 F.Supp. 10 (D.Mass.1997) (*"AAMA III"*), and summarized in our

most recent opinion, *see AAMA V,* 163 F.3d 74. We will again briefly summarize the most relevant facts and update them to reflect the events since our last opinion.

## A. *Regulatory Background*

When Congress enacted the Clean Air Act ("CAA"), codified at 42 U.S.C. §§ 7401 *et seq.,* it expressly preempted all state regulation of new motor vehicle emissions. *See id.* § 7543(a) (codifying § 209(a) of the CAA). However, as an exception to this general preemption, Congress allowed California alone among the states to implement its own vehicle emissions standards, subject to certain conditions. *See id.* § 7543(b) (codifying § 209(b) of the CAA). Under § 209 of the act, California may request a waiver of preemption from the EPA for its emissions standards once it (California) has determined that those standards are no less protective of public health than federal regulations. *See id.* The EPA must grant the waiver unless it finds that California's "no less protective" determination was arbitrary and capricious or that the standards are not necessary to meet compelling and extraordinary conditions. *See id.*

In 1977, Congress added another limited exception to the general preemption stated in § 209(a) of the CAA. Section 177 of the act, codified at 42 U.S.C. § 7507, permits any state to adopt emissions standards if (1) the standards are "identical to California standards for which a waiver has been granted" and (2) such standards are adopted at least two years before commencement of the particular model year to which they apply. As we noted in our previous opinion, "both the statutory language and the legislative history suggest that section 177 was the result of a compromise between the competing interests of the states and the automakers, giving states greater flexibility without overbur-

dening automakers with too many separate emissions-control standards." *AAMA V,* 163 F.3d at 78.

## B. *Factual Background*

In 1990, California adopted emissions standards specifically targeting "zero emissions vehicles," or ZEVs, as part of a larger "low emission vehicle," or LEV, program. The program was granted a § 209(b) waiver by the EPA in 1993, and that same year Massachusetts copied the program pursuant to § 177 of the CAA. In 1996, however, California determined that the ZEV portion of its LEV program was counterproductive and repealed its ZEV requirements for the model years 1998–2002. At about the same time, California entered into memoranda of agreement ("MOAs") with seven major automakers by which the manufacturers agreed to nevertheless develop ZEV technology and introduce a limited number of ZEVs into the California market during the years 1998–2002; for its part, California agreed to provide infrastructural support for ZEV implementation.[1] In response, Massachusetts amended its ZEV mandates to reflect the automakers' obligations under the MOAs, although the reciprocal obligations undertaken by California were not included in the amended Massachusetts regulations.

## C. *Procedural Background*

The Manufacturers amended their complaint (originally filed in 1993) to challenge the Massachusetts regulations as amended in 1996. The district court, in a thorough and well-reasoned opinion, granted summary judgment in favor of the Manufacturers, holding that the Massachusetts regulations were preempted by the CAA. *See AAMA III,* 998 F.Supp. 10. On appeal, we opted to stay our determination of

---

1. California has submitted a request to the EPA for a finding that the LEV program as amended in 1996 falls within the scope of the 1993 § 209(b) waiver. Although the EPA apparently considers the MOAs to be covered by this request, California maintains that the MOAs were not to be considered in the request because they are not "standards" within the meaning of the CAA, a position which we discuss (and agree with) below.

the matter pending a referral of several questions to the EPA under the doctrine of primary jurisdiction, including whether the Massachusetts ZEV mandates were "standards" for purposes of § 177, whether the California MOAs were "standards" for purposes of §§ 209 and 177, and whether the ZEV mandates were otherwise "identical to California standards for which a waiver had been granted" as required by § 177. *See AAMA V,* 163 F.3d 74. Pursuant to our opinion, the Commonwealth of Massachusetts notified the EPA and requested its opinion on these matters.

The EPA responded in a letter dated September 15, 1999. The EPA stated several opinions in support of its general conclusion that the Massachusetts regulations were not preempted by the CAA. First, the EPA opined that the Massachusetts ZEV mandates are "standards" within the meaning of the CAA, and thus subject to the identicality requirements of § 177. Second, the EPA concluded that, under the particular circumstances of this case, the California MOAs should be considered "standards," notwithstanding the EPA's position that voluntary agreements generally are not standards subject to §§ 209 and 177. Third, the EPA opined (with little analysis) that the Massachusetts standards were "identical" to the California "standards" set forth in the MOAs. Finally, the EPA gave a preliminary opinion that the MOAs fell within the scope of the original § 209(b) waiver granted to the California LEV program in 1993, although the agency noted that a more detailed discussion of the issue would accompany a forthcoming decision on California's 1996 request for a "within the scope" determination.

Shortly after the EPA issued its September 15, 1999 opinion letter, the Manufacturers challenged the agency's authority to issue that opinion in the United States Court of Appeals for the District of Columbia Circuit. The Manufacturers argued that the EPA did not have jurisdiction to decide the issues set forth in the opinion letter, and that the EPA's positions were in any event incorrect on the merits. On November 15, 1999, the D.C. Circuit transferred the Manufacturers' petition for review to this Court (No. 99–2245), and we consolidated it with the original appeal (No. 98–1036).

After the two cases were consolidated, we requested a final round of supplemental briefing from the parties. We have received those briefs, and we now proceed to a decision.

We hold that the EPA's September 15, 1999 opinion is not reviewable final agency action, and we therefore dismiss the petition for review in No. 99–2245. In No. 98–1036, we hold that the Massachusetts ZEV mandates are "standards" within the meaning of the CAA, but that they are not "identical to California standards for which a waiver has been granted." Consequently, the Massachusetts regulations are preempted by the CAA, and we affirm the district court's grant of summary judgment in favor of the Manufacturers.

## II. Law and Application

### A. *No. 99–2245*

■ The litigation in Appeal No. 99–2245 is an unfortunate consequence of our previous decision to stay the appeal in No. 98–1036 pending a primary jurisdiction referral to the EPA. While our intentions in making that referral reflected an appropriate respect for the policies underlying the doctrine of primary jurisdiction, in retrospect our referral to the EPA was somewhat inartful.

As is fairly clear from our prior opinion, it was our intention to allow the EPA to issue binding rulings or decisions on the questions of statutory interpretation and application that we referred to the agency. However, in hindsight, our decision to invoke the primary jurisdiction doctrine *sua sponte* without any briefing from the parties was not a wise one. Of the several issues referred for the EPA's consideration, it now appears that the agency was

not in a position to determine any of them authoritatively. For instance, as all parties now apparently agree, the ultimate legal determination of whether the Massachusetts regulations are preempted by the CAA is a question of federal preemption law for the courts alone to decide. Similarly, the subsidiary issues of what constitutes a "standard" under CAA §§ 209 and 177 and whether the ZEV mandates are "identical" to California standards require us to interpret the CAA for purposes of applying federal preemption law, not for purposes of administering the CAA; as such, the issues fall squarely within this Court's jurisdiction but not within any particular expertise or special administrative competence of the EPA.[2] Presumably, this is why the EPA's September 15, 1999 opinion letter is written in terms of the EPA's "beliefs" regarding the various issues referred for its consideration. In fact, in the No. 99–2245 litigation, the EPA has taken the position that the September 15, 1999 opinion letter was an advisory opinion only, with no independent impact upon the parties. We agree with this characterization.

■ The Administrative Procedure Act subjects all "final agency actions" to judicial review. *See* 5 U.S.C. § 704. Agency action is final if it constitutes a " 'definitive statement [ ] of [the agency's] position' with 'direct and immediate' consequences." *Trafalgar Capital Assocs., Inc. v. Cuomo,* 159 F.3d 21, 35 (1st Cir.1998) (quoting *FTC v. Standard Oil Co.,* 449 U.S. 232, 241, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980)) (alterations in original). The EPA's opinion letter does not purport to be a definitive statement by the agency of its position on these various issues. For example, with regard to the question of whether a

waiver has been granted for the California MOAs, the EPA makes explicit reference to the pending proceedings on California's request for a "within the scope" determination on its amended LEV program. Likewise, the agency takes great pains to limit its conclusion that the MOAs constitute standards for purposes of §§ 209 and 177 to the "unique circumstances" of this case, expressly suggesting that a different analysis would be appropriate in most cases. Nor does the opinion letter have any direct or immediate consequences for the parties. There was no controversy before the agency other than the referral from this Court, and the EPA correctly recognized that this Court will decide the presumption issues before us on appeal, not the agency. Because the September 15, 1999 opinion letter was not intended to be a definitive statement of the EPA's positions and has no direct or immediate impact on the parties, we hold that it is not a reviewable final agency action, and we dismiss the petition for review in No. 99–2245.

### B. *No. 98–1036*

We turn our attention, then, to the issues before us in the original appeal: whether the Massachusetts ZEV mandates are "standards" within the meaning of the CAA, and whether they are "identical to California standards for which a waiver has been granted." In addition, we must address the level of deference, if any, to be afforded to the EPA's response to our primary jurisdiction doctrine referral. We address the last issue first.

### 1. We Need Not Defer to the Views Expressed by the EPA in Its September 15, 1999 Opinion

■ Despite its position that the EPA's September 15, 1999 opinion "is just an

---

2. The question of whether a waiver has been granted presents a slightly different issue, because the EPA is in fact the agency charged with issuing such waivers to California. However, the language of § 209(b) suggests that such waiver determinations are made only after the waiver process is initiated by California, and California maintains that it

has not made a waiver request with regard to the MOAs. In any event, the EPA's discussion of the issue in the September 15, 1999 opinion letter obviously refers to the pending "within the scope" request as the appropriate forum for a final determination, not our referral.

opinion, ... neither binding nor intended to be binding on the parties," Appellant's 2d Supp. Brief at 4, Massachusetts maintains that the Court should accept the EPA's conclusions because of the agency's experience with and understanding of the CAA generally. The Manufacturers, in contrast, argue that the EPA opinion is entitled to no deference from this Court because the EPA lacked jurisdiction over the issues, because the opinion was only advisory and nonbinding, because it is inconsistent with the plain language of the CAA, and because it is simply wrong as a matter of law.

Given our conclusion that the September 15, 1999 opinion letter is not final agency action, we hold that the opinion does not command any particular deference under *Chevron* or comparable doctrines. *See Pan Am. Grain Mfg. Co. v. EPA,* 95 F.3d 101, 103 (1st Cir.1996) (affording substantial deference to "final agency actions") (relying on *Chevron U.S.A., Inc. v. NRDC,* 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)); *see also Mid–America Care Found. v. NLRB,* 148 F.3d 638, 642 (6th Cir.1998) ("[C]ourts do not accord *Chevron* deference to non-binding advisory opinions of an administrative agency."). That said, we do recognize the value of the EPA's opinion and its response to our request.

We now turn to the substantive preemption analysis.

### 2. The Massachusetts ZEV Mandates Are Standards Within the Meaning of CAA §§ 209 and 177

■ Both § 209 and § 177 of the CAA explicitly apply to the adoption or enforcement by the states of "*standards* relating to the control of emissions." 42 U.S.C. §§ 7543, 7507 (emphasis added). Massachusetts argued before the district court and initially before this Court that its ZEV mandates were "enforcement procedures," rather than standards, and as such were

3. Massachusetts stated in its second supplemental brief that it "agrees with most of the

not subject to §§ 209 and 177. However, all parties now apparently agree[3] that the ZEV mandates are standards within the meaning of §§ 209 and 177. We reach the same conclusion.

We share the opinion of the Court of Appeals for the Second Circuit that "the ZEV sales requirement must be considered a standard 'relating to the control of emissions.'" *American Auto. Mfrs. Ass'n v. Cahill,* 152 F.3d 196, 200 (2d Cir.1998) (holding comparable ZEV mandates adopted by the State of New York to be preempted by the CAA). We agree that "a requirement that a particular percentage of vehicle sales be ZEVs has no purpose other than to effect a general reduction in emissions." *Id.; see also Motor & Equip. Mfrs. Ass'n v. EPA,* 627 F.2d 1095, 1112–13 (D.C.Cir.1979) (upholding EPA interpretation that "standards" in § 209 refers to "regulations on quantitative levels of emissions"). Massachusetts' original contention that the ZEV mandates should not be considered standards simply because they would have a very small impact on overall emissions levels is unpersuasive—whether a regulation effects a small or great impact on overall emissions levels is a question of degree, not one of kind.

The EPA's September 15, 1999 opinion letter also supports the conclusion that the ZEV mandates are standards for purposes of §§ 209 and 177. In the agency's words:

> Setting the link between the emission limit and the applicability of the limit to a particular number of vehicles is an inherent part of the standard setting process.... If a production requirement, such as the ZEV mandate, is not considered part of the standard itself, then the compliance with a standard ... would be disconnected from the obligation to build cars to meet the standard. This could lead to emission standards that have no air quality benefit at all.

EPA's analysis ... and accedes to the remainder." Appellant's 2d Supp. Br. at 10.

EPA Opinion Letter at 9. The EPA also points out that, "if production requirements are not standards [subject to §§ 209 and 177], then other states could enact production requirements that were different from California's requirements, substantially undercutting Congress's intent under section 177." *Id.* at 10.

We agree with both the EPA and the Second Circuit that the ZEV mandates are standards as that term is used in §§ 209 and 177 of the CAA. In contrast to "enforcement mechanisms" such as testing and reporting requirements, we think that numerical production requirements such as those in the Massachusetts ZEV mandates must be considered "standards relating to the control of emissions." Rather than simply monitoring or enforcing compliance with some distinct numerical emissions standard, the very purpose and effect of the ZEV mandates is to effect a quantitative reduction in emissions. *Cf. Motor & Equip. Mfrs. Ass'n,* 627 F.2d at 1112–13. As such, they fall squarely within the language of §§ 209 and 177.

**3. The ZEV Mandates Are Not "Identical to California Standards for which a Waiver Has Been Granted"**

Having concluded that the Massachusetts regulations are standards presumptively preempted by § 209 and subject to the requirements of § 177, our next task is to determine whether the ZEV mandates are "identical to California standards for which a waiver has been granted." We hold that they are not.

**a.** *The MOAs Are Not California Standards*

■ The district court held that the MOAs entered into by California and the automakers are not standards within the meaning of § 177, because they are voluntary contractual agreements rather than legislation or formal administrative regulations. *See AAMA III,* 998 F.Supp. at 20–24. The court found that both the language and the legislative history of the

CAA suggested that the provisions of §§ 209 and 177 were intended to govern formal regulations adopted by the states, rather than voluntary and cooperative agreements between the states and automakers. *See id.*

The district court's ruling is consistent with Supreme Court precedents holding that federal preemption is generally confined to formal state laws and regulations and not applicable to contracts and other voluntary agreements. *See American Airlines, Inc. v. Wolens,* 513 U.S. 219, 228–29, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995) (contractual obligations not "standards" within meaning of federal preemption statute); *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 526, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (holding · voluntary contractual agreements not preempted by federal statute).

Furthermore, this is the general position taken by the EPA in its opinion letter:

EPA believes that in general, provisions in voluntary agreements ordinarily should not be considered "standards" subject to section 209(a). The language of the statute appears to indicate that provisions in voluntary agreements should not generally be considered standards under section 209. The legislative history of section 209 also appears to indicate that the prohibition in section 209 is meant to apply to state mandates (regulations and laws), not voluntary agreements.

Moreover, if production requirements in voluntary agreements were generally preempted, then every such requirement in agreements in every state would be preempted. . . . EPA believes it would be an inappropriate interpretation of section 209(a) to treat all such agreements as prohibited.

EPA Opinion Letter at 14. Nevertheless, the EPA concluded that the "unique circumstances of this case" supported a determination that these particular MOAs

**8**

were standards for purposes of §§ 209 and 177.

We agree with the EPA's general analysis, but not with its specific conclusion in this case. We do not share the agency's willingness to create an exception in this case that would be inconsistent with the statutory language and congressional intent. The EPA concluded that the California MOAs should be considered standards because (1) they replaced the binding ZEV requirements enacted in 1990; (2) the MOAs provided for severe contractual remedies in the event of nonperformance by the automakers; and (3) there were indications that California and the automakers entered into the MOAs intending that other states not be able to copy them under § 177 as they could formal regulations. We find these considerations insufficient to support a conclusion at odds with the EPA's general (and, we think, correct) interpretation of the statute. Although we understand the EPA's central concern—that allowing agreements such as the MOAs to escape § 177 analysis could interfere with the ability of other states to emulate the regulatory scheme actually in effect in California—we think that our result is dictated by the plain language and intent of the statute. The circumstances of this case provide no sufficient justification, if in fact one could exist, for ignoring the mandates of the Act.

The frustration felt by the EPA and Massachusetts likely stems in part from the fact that Massachusetts' aim in enacting the ZEV mandates was to reduce air pollution, a laudable goal in its own right and, more importantly, the central purpose of the Clean Air Act. However, in enacting §§ 209 and 177, Congress chose carefully the means by which to implement the Act's purpose, and we are not at liberty to modify Congress's determination. We think

that the Second Circuit was correct when it stated:

> With or without the MOAs, California has still abandoned its ZEV requirement for model years 1998–2002. Other states cannot opt-in to a California standard that no longer exists. If Congress desires to allow other states to impose California's MOAs as their own regulations, legislation permitting that and describing the preconditions to such regulation will be necessary.

*Cahill,* 152 F.3d at 201.

### III. Conclusion

Because the California MOAs are not "standards" for purposes of § 177 of the CAA, Massachusetts' regulations purporting to copy them are not "identical to California standards for which a waiver has been granted" as required by § 177.[4] We therefore hold that the Massachusetts ZEV mandates are preempted by the CAA, and we affirm the decision of the district court.

**Affirmed.**

---

4. Because our conclusion that the MOAs are not standards disposes of the case, we do not reach the questions of whether, if the MOAs were standards, the Massachusetts ZEV mandates are "identical" to them and whether the MOAs are standards "for which a waiver has been granted."