Carl LOCHMAN; Elaine Lochman, individually and on behalf of Kelli Lochman and Kyle Lochman, Plaintiffs–Appellants,

v.

COUNTY OF CHARLEVOIX, Jointly and Severally; and Philo Sumner, Jointly and Severally, Defendants–Appellees.

No. 95–1930.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 5, 1996.

Decided Sept. 3, 1996.

Frank G. Becker (argued and briefed), Becker & Van Cleef, Southfield, MI, Arthur B. Greenstone, Birmingham, MI, for Plaintiffs-Appellants.

Dale L. Arndt (argued and briefed), Grand Rapids, MI, for Defendants-Appellees.

Before: LIVELY, KENNEDY, and SILER, Circuit Judges.

LIVELY, Circuit Judge.

This case arose out of a tragic accident in which a 12–year–old girl suffered serious and permanent injuries while diving into a lake in a public park from a pier or dock owned by Charlevoix County, Michigan. The single legal issue is whether a federal statute, section 10 of the Rivers and Harbors Appropriation Act of 1899 (the Act), 33 U.S.C. § 403 (1988), created a "right" that is enforceable in an action brought pursuant to 42 U.S.C. § 1983.

I.

A.

The facts are undisputed. Whiting Park is a county park located in and operated by Charlevoix County. The park offers beach and recreational facilities to the public free of charge. The beach facility includes several docks. One of the docks, known as the "T dock" or the "L dock," was used for diving by both children and adults for many years prior to 1993. The defendant, Philo Sumner, the manager of Whiting Park, built the dock at issue sometime in 1977 or 1978 to replace a similar dock that had been at the park since the 1950s.

Historically, each fall Mr. Sumner removed the dock from the lake to store it for the winter, and each spring he placed the dock back in the lake at its traditional location. Following his usual practice, sometime in May 1993, Mr. Sumner took the dock from storage and placed it in its usual location, where the water was at least 4½ to 5 feet deep, a depth safe for diving. The dock remained in that position without incident throughout June and early July.

On the morning of July 9, 1993, an instructor from the Boyne City Swim School, a community swim program that made use of the beach facility for swimming and diving lessons, arrived at the park before time for her class and noticed two park employees moving the dock from its traditional location to an area of shallower water. The instructor sought out Mr. Sumner and voiced her concern that the new location would be unsafe for diving. Mr. Sumner stated that he had instructed the park employees to move the dock due to beach erosion at the dock's old location, which forced swimmers to step into the water before stepping onto the dock. Mr. Sumner indicated he was concerned that having people step from the water onto the dock would make the dock unnecessarily slip-

pery and potentially dangerous. After confirming that the water at the end of the dock was less than 4½ feet deep, a dangerous depth for diving, the instructor requested that Mr. Sumner either lengthen the dock or place a warning sign to alert divers of the potential danger of diving into the shallow water. He declined to do either. Later that day, Kelli Lochman dove off the end of the dock, struck her head on the shallow bottom, and sustained severe injuries to her cervical spine, which rendered her quadriplegic.

### B.

In February 1995, the Lochmans filed a multi-count complaint for damages. In Count I of their complaint, the Lochmans brought an action under § 1983 against Mr. Sumner and Charlevoix County based on an alleged violation of the Act. The remaining counts contained due process claims under § 1983 and various pendent state law claims. Only the § 1983 claim based on alleged violation of § 10 of the Act is before us on appeal.

Section 10 of the Act, 33 U.S.C. § 403, relied upon by the plaintiffs, prohibits "[t]he creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States...." In addition, the statute makes it unlawful to build any wharf, pier or similar structure in navigable waters without obtaining approval of the Corps of Engineers acting for the Secretary of the Army. The park lake is an arm of Lake Charlevoix, a navigable body of water. The county conceded that it did not obtain the permission or approval of the Army Corps of Engineers before moving the dock to shallower water in 1993.

The defendants filed a motion for summary judgment, arguing that there is no right of action under § 1983 for the alleged violation of § 10 of the Act. After reviewing the parties' arguments in light of Supreme Court precedents, the district court granted summary judgment on all federal claims and declined to exercise supplemental jurisdiction over the state law claims, dismissing them without prejudice.

### II.

In granting summary judgment on Count I, the district court relied principally on *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990) and *California v. Sierra Club*, 451 U.S. 287, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981), after first noting that in *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the Supreme Court held that § 1983 provides a remedy for violations of federal statutes as well as for violations of the Constitution.

### A.

In *Wilder*, a group of private hospitals sued the governor of Virginia and other state officials under § 1983 to challenge the method by which the State was reimbursing health care providers under the Medicaid Act, 42 U.S.C. § 1396. The Court stated that there are two exceptions to the *Thiboutot* holding that § 1983 is an available remedy for injuries caused by violation of a federal statute. The first exception is that there can be no § 1983 action if the statute does not create "enforceable rights, privileges, or immunities within the meaning of § 1983." The second exception applies if "Congress has foreclosed such enforcement of the statute in the enactment itself." *Id.* at 508, 110 S.Ct. at 2517 (quoting *Wright v. Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987)). The presence of either exception forecloses a § 1983 claim based on an alleged statutory violation. *Cline v. Rogers*, 87 F.3d 176, 182–83, n. 5 (6th Cir.1996). In *Wilder*, 496 U.S. at 508, 110 S.Ct. at 2516–17, the Court listed the exceptions in the disjunctive.

In determining whether the first exception applies, that is, whether a particular statute creates a "federal right" that is enforceable under § 1983, a court's inquiry "turns on whether 'the provision in question was intend[ed] to benefit the putative plaintiff.'" *Id.* at 509, 110 S.Ct. at 2517 (quoting *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 106, 110 S.Ct. 444, 448, 107 L.Ed.2d 420 (1989)). If the provision in question was intended to benefit one in the

plaintiff's position, it creates an enforceable right and the first exception does not apply. The inquiry with respect to the second exception is whether the administrative remedial measures provided in a given statute are " 'sufficiently comprehensive ... to demonstrate congressional intent to preclude the remedy of suits under § 1983.' " *Id.* at 521, 110 S.Ct. at 2523 (quoting *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 20, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981)).

■ The *Wilder* Court, 496 U.S. at 509, 110 S.Ct. at 2517, prescribed a three-part test for determining whether the first exception applies. We stated the test as follows in *Wood v. Tompkins*, 33 F.3d 600 (6th Cir. 1994):

> To determine whether the first of these two exceptions applies, the Court has developed a three part test:
>
> (1) Was the provision in question intended to benefit the plaintiff?
>
> (2) Does the statutory provision in question create binding obligations on the defendant governmental unit, rather than merely expressing a congressional preference? and
>
> (3) Is the interest the plaintiff asserts specific enough to be enforced judicially, rather than being "vague and amorphous"?

*Id.* at 604–05. All three questions must be answered affirmatively to demonstrate the existence of a remedy under § 1983. Significantly, we held in *Wood* that "[t]he plaintiff bears the burden of proving that this exception does not apply." *Id.* at 605.

### B.

In *Sierra Club*, the Supreme Court held that Congress did not create a private right of action, either explicitly or by implication, on behalf of persons claiming to have been injured by alleged violations of 33 U.S.C. § 403. The Court stated that the "ultimate issue is whether Congress intended to create a private right of action" in the statute. 451 U.S. at 293, 101 S.Ct. at 1779. This intent is to be discerned by applying the four factors set forth in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct.

2080, 45 L.Ed.2d 26 (1975), "for determining whether a private right of action should be implied from a federal statute...." *Id.* at 292, 101 S.Ct. at 1778 (quoting *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 26, 100 S.Ct. 242, 250, 62 L.Ed.2d 146 (1979) (White, J., dissenting)).

The first of the four *Cort* factors is "whether the plaintiff is a member of a class for 'whose *especial* benefit the statute was enacted.' " *Id.* at 293, 101 S.Ct. at 1779 (quoting *Cort*, 422 U.S. at 78, 80–82, 95 S.Ct. at 2088, 2089–90). The Court cautioned that "[t]he question is not simply who would benefit from the Act, but whether Congress intended to confer federal rights upon those beneficiaries." *Id.* at 294, 101 S.Ct. at 1779. After reviewing the language of the Act and its legislative history, the Court concluded that Congress' intention in enacting § 10 was to give the Secretary of War (now the Secretary of the Army) authority to take action with respect to obstructions and nuisances in navigable waters. "Congress was not concerned with the rights of individuals." *Id.* at 295, 101 S.Ct. at 1780.

The Court then considered the second *Cort* factor, whether Congress intended to create a private remedy for violation of the Act. "[T]he focus of the inquiry is on whether Congress intended to create a remedy." *Id.* at 297, 101 S.Ct. at 1781. After considering the Act's language and the legislative history, the Court concluded that Congress did not intend to provide a private remedy.

Having found that analysis under the first two *Cort* factors indicated no congressional intent to confer federal rights on the Sierra Club and other plaintiffs in the case, or to provide a private remedy for violations of § 10 of the Act, the Court found it unnecessary to consider the remaining *Cort* factors. These remaining factors, whether the purpose of the statute would be advanced by implying a private action and whether such a remedy is within the federal domain interest, "are only of relevance if the first two factors give indication of congressional intent to create the remedy." *Id.* at 298, 101 S.Ct. at 1781.

### III.

#### A.

The plaintiffs argue that *California v. Sierra Club* is not dispositive of their claim. They contend that because *Sierra Club* involved a direct action under § 10 rather than an action under § 1983 for violation of § 10, a different approach is required.

The *Wilder* Court stated, as the plaintiffs point out, that there is a different inquiry when a court is seeking to determine whether a private right of action can be implied from a particular statute and when it seeks to determine whether a statute creates enforceable rights under § 1983. *Wilder,* 496 U.S. at 509 n. 9, 110 S.Ct. at 2517 n. 9. Given the Supreme Court's reluctance to find " 'that Congress intended to preclude reliance on § 1983 as a remedy' for the deprivation of a federally secured right" *id.* at 520, 110 S.Ct. at 2523 (quoting *Smith v. Robinson,* 468 U.S. 992, 1012, 104 S.Ct. 3457, 3469, 82 L.Ed.2d 746 (1984)), the plaintiffs argue that there is no basis for holding that § 1983 does not provide a remedy for violation of § 10. Rather, the plaintiffs contend, § 10 was designed to protect all persons using the lake who are affected by a structure such as the dock that was moved without the required authorization. According to the plaintiffs, the very fact that there is no direct action available to a person injured by such a violation strengthens their claim that § 1983 provides a remedy.

#### B.

The defendants assert that both exceptions to the *Thiboutot* rule apply to § 10. In the first place, they maintain that the statute does not create enforceable rights, privileges or immunities within the meaning of § 1983. They reach this conclusion on the basis of the first question in the three-part test outlined in *Wilder* and followed by this court in *Wood.*

The first question under *Wilder* is whether Congress intended to confer a benefit on persons with claims such as those of the plaintiffs in enacting § 10. This is essentially the same as the first inquiry under *Cort,* according to the defendants. Concededly, the inquiry in a case when a plaintiff claims a right to proceed under § 1983 for an alleged violation of a federal statute is directed to determination of whether Congress created a right, privilege or immunity rather than a determination of whether Congress created a cause of action by implication. Nevertheless, the first test for making the determination is the same in both cases: Did Congress intend to confer a benefit on the plaintiff? The Supreme Court answered this question in *Sierra Club,* say the defendants, by finding that Congress did not intend to afford a private right of action for persons injured by an alleged violation of § 10.

With respect to the second exception to *Thiboutot,* the defendants argue that a review of the entire Act demonstrates that Congress provided the type of comprehensive enforcement mechanism for the prohibitions of § 10 that the Supreme Court has found to foreclose the availability of obtaining a remedy under § 1983. They point out that § 12 of the Act provides criminal penalties for violations of § 10 and that § 17 directs the Department of Justice to "conduct the legal proceedings necessary to enforce the provisions of [§ 10]." 33 U.S.C. § 413. The defendants contend that this enforcement scheme is inconsistent with the notion that Congress intended to afford individual plaintiffs claiming injury by reason of violations of § 10 a federal right enforceable under § 1983.

### IV.

#### A.

■ There is no § 1983 remedy for violation of a federal statute unless the statute creates "rights, privileges, or immunities"; the violation of every federal statute does not lead to the conclusion that § 1983 provides a remedy. *Golden State Transit Corp. v. Los Angeles,* 493 U.S. 103, 106, 110 S.Ct. 444, 448–49, 107 L.Ed.2d 420 (1989). In determining whether a statute creates the required rights, privileges or immunities, we look to see if it creates binding obligations on the governmental unit charged with the violation *and* whether Congress intended it to benefit the putative plaintiff. *Id.*

We conclude that, unlike the statutes at issue in *Thiboutot* and *Wilder,* there is no indication that § 10 was intended to benefit any particular person or group of persons. We reach this conclusion by examining both the language of the Act itself and its legislative history.

The language of the Act[1] leads us to agree with the district court that the text indicates no intent by Congress to create federal rights in every person who is affected by any obstruction or other structure placed in a waterway without the required approval. Rather, the tenor of the Act indicates that its purpose was to keep the waterways open for unimpeded navigation. The Supreme Court settled this question in *Sierra Club,* stating:

> Here, the statute states no more than a general proscription of certain activities; it does not unmistakably focus on any particular class of beneficiaries whose welfare Congress intended to further. Such language does not indicate an intent to provide for private rights of action.... Section 10 ... *is the kind of general ban which carries with it no implication of an intent to confer rights on a particular class of persons.*

451 U.S. at 294, 101 S.Ct. at 1779 (emphasis added).

The Court then briefly discussed the legislative history of the Act:

> Neither the Court of Appeals nor respondents have identified anything in the legislative history suggesting that § 10 was created for the especial benefit of a particular class. On the contrary, the legislative history supports the view that the Act was designed to benefit the public at large by empowering the Federal Government to exercise its authority over interstate commerce with respect to obstructions on navigable rivers caused by bridges and similar structures. In part, the Act was passed in response to this Court's decision in *Willamette Iron Bridge Co. v. Hatch,* 125 U.S. 1 [8 S.Ct. 811, 31 L.Ed. 629] (1888). There the Court held that there was no federal common law "which prohibits obstructions and nuisances in navigable rivers." *Id.,* at 8 [8 S.Ct. at 815].... [T]he clear implication of the Court's opinion was that in the absence of specific legislation no party, including the Federal Government, would be empowered to take any action under federal law with respect to such obstructions. The Act was intended to enable the [Government] to take such action. Congress was not concerned with the rights of individuals.

*Id.* at 294–95, 101 S.Ct. at 1780 (footnote and citations omitted).

In summary the Court stated that in enacting § 10, "Congress was concerned not with private rights but with the Federal Government's ability to respond to obstructions on navigable waterways." *Id.* at 296, 101 S.Ct. at 1780 (footnote omitted).

It is true that the Court conducted a *Cort v. Ash* analysis in *Sierra Club* for the purpose of determining whether § 10 contained an implied right of action rather than a *Wilder* analysis to determine whether § 10 creates rights, privileges and immunities making a § 1983 remedy available for a violation. This difference does not render *Sierra Club* irrelevant to our decision, as claimed by the plaintiffs. This is so because the first and most fundamental question to be answered in both determinations is the same: In enacting

---

1. Section 10, 33 U.S.C. § 403 provides:

   **§ 403. Obstruction of navigable waters generally; wharves; piers, etc.; excavations and filling in**

   The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited; and it shall not be lawful to build or commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water of the United States, outside established harbor lines, or where no harbor lines have been established, except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army; and it shall not be lawful to excavate or fill, or in any manner to alter or modify the course, location, condition, or capacity of, any port, roadstead, haven, harbor, canal, lake, harbor of refuge, or inclosure within the limits of any breakwater, or of the channel of any navigable water of the United States, unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of the Army prior to beginning the same.

this statute, did Congress intend to benefit these plaintiffs? See *Wilder*, 496 U.S. at 509, 110 S.Ct. at 2517 (in determining whether a given statute creates a federal right enforceable under § 1983, the inquiry "turns on whether 'the provision in question was intend[ed] to benefit the putative plaintiff' "). See also, *Suter v. Artist M.*, 503 U.S. 347, 363–64, 112 S.Ct. 1360, 1370, 118 L.Ed.2d 1 (1992) (the "most important inquiry" in determining whether a statute contains an implied right of action for private enforcement is "whether Congress intended to create the private remedy sought by the plaintiffs"). The plaintiffs did not carry their burden of demonstrating that Congress created a federal right intended to benefit individuals claiming injury from a violation of § 10.

### B.

Because we have concluded that § 10 was not intended to protect individuals suffering the injuries for which the plaintiffs in this case seek damages, we need not determine whether the second *Thiboutot* exception would deny validity to their § 1983 action. *Wood v. Tompkins*, 33 F.3d at 608; *Dumas v. Kipp*, 90 F.3d 386 (9th Cir.1996).

### *CONCLUSION*

Having conducted the required *de novo* review of an order granting summary judgment, we find that the plaintiffs failed to demonstrate the existence of a genuine issue of material fact, and that the defendants were entitled to judgment as a matter of law. FED. R. CIV.P. 56(c). Accordingly, the judgment of the district court is **AFFIRMED.**