**AMERICAN AUTOMOBILE MANUFACTURERS ASSOCIATION and Association of International Automobile Manufacturers, Inc., Plaintiffs,**

v.

**John P. CAHILL, Acting Commissioner of the New York Department of Environmental Conservation and Eliot L. Spitzer, Attorney General of the State of New York,[1] Defendants.**

**No. 97–CV–444 (LEK/DNH).**

United States District Court,
N.D. New York.

May 18, 1999.

---

**1.** Eliot L. Spitzer, who became Attorney General at the start of 1999 is substituted for Dennis Vacco pursuant to Fed.R.Civ.P. 25(d)(1).

Mayer, Brown & Platt, New York City, of counsel Philip A. Lacovara, for plaintiffs.

Hon. Eliot L. Spitzer, Office of the Attorney General State of New York, Environmental Bureau, Albany, NY, of counsel James M. Tierney, Lisa M. Burianek, for defendants.

Law Office of John W. Caffry, Glens Falls, NY, of counsel Louise G. Roback, for Amici Curiae Environmental Advocates, Natural Resources Defense Council, and The American Lung Association.

Paul A. Crotty, Corporation Council for the City of New York, New York City, of counsel Marjorie Fox, Asst. Corp. Council, for Amicus Curiae The City of New York.

## MEMORANDUM–DECISION AND ORDER

KAHN, District Judge.

Presently pending is a motion by Plaintiff Association of International Automobile Manufacturers, Inc. ("AIAM") for attorneys fees pursuant to Fed.R.Civ.P. 54(d)(2)(A) and 42 U.S.C. § 1988. Plaintiff asserts that it is the prevailing party in an action brought under 42 U.S.C. § 1983 and is thus presumptively entitled to such fees. Defendants assert that Plaintiff's claims were not properly brought under § 1983 and that, in the alternative, special circumstances would make an award of such fees unjust. This Court finds that fees are warranted under § 1988, and therefore grants Plaintiff's motion.

### I. Background

Both this Court and the Court of Appeals for the Second Circuit have issued published decisions discussing the background of this case. Familiarity with those decisions is assumed. *See American Auto Mfrs. Ass'n v. Cahill ("AAMA I")*, 973 F.Supp. 288 (N.D.N.Y.1997), *rev'd, American Auto. Mfrs. Ass'n v. Cahill ("AAMA II")*, 152 F.3d 196 (2d Cir.1998). The background relevant to this motion will therefore be reviewed briefly.

Plaintiffs AIAM and the now-defunct American Automobile Manufacturers Association ("AAMA") brought this action pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 7604 seeking, *inter alia*, to enjoin enforcement of New York's zero emission vehicle ("ZEV") sales mandate. This mandate, codified at 6 N.Y.C.R.R. § 218–4.1, required that, starting in 1998, a certain percentage of the new automobiles offered and sold in New York each year be ZEVs.

Plaintiffs alleged six claims. Plaintiffs' first claim alleged that the mandate was preempted by § 209(a) of the Clean Air Act ("CAA"), 42 U.S.C. § 7543(a).[2] The

---

**2.** Section 209(a) provides in relevant part:
No State or any political subdivision thereof shall adopt or attempt to enforce any

standard relating to the control of emissions from new motor vehicles or new motor vehicle engines subject to this part.

second claim alleged that the mandate was illegal because it was not identical to the California emission standards as required by § 177 of the CAA, 42 U.S.C. § 7507.[3] Because of the importance of these claims to the determination of the instant motion, discussion of the substance of the provisions is necessary.

■ Section 209(a) expressly prohibits states from "adopt[ing] or attempt[ing] to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines subject to this part." CAA § 209, 42 U.S.C. § 7543; see also American Auto Mfrs. v. Comm'r Environ. Protect., 998 F.Supp. 10, 12–13 (D.Mass.1997). However, § 209(b) provides that California is allowed to adopt and enforce its own standards so long as they meet certain conditions. CAA § 209(b), 42 U.S.C. § 7543(b)(1). Further, in 1977, Congress added § 177 to the CAA, which allows States to also adopt standards which are "identical to the California [vehicle emission] standards." CAA § 177, 42 U.S.C. § 7507. Thus, states are provided with a choice between the federal standards and the California standards, but may not choose a third set of standards. CAA § 177, 42 U.S.C. § 7507 (states may not create a "third vehicle"); see also Comm'r Environ. Protect., 998 F.Supp. at 13.

Plaintiffs' first and second claims are therefore closely related: they assert that the ZEV sales mandate is subject to § 209(a) preemption of "standards relating to the control of emissions" and is not saved by the § 177 exception for standards identical to those of California.

In addition to the first two claims, Plaintiffs alleged (3) the mandate was preempted by § 249 of the CAA, 42 U.S.C. § 7589;[4] (4) the mandate was subject to "implied preemption" under the CAA; (5) the mandate violated the Due Process Clause of the Fourteenth Amendment; and (6) the mandate violated the Commerce Clause. Subsequently, Plaintiffs brought a motion for partial summary judgment, and Defendants brought a motion to dismiss or in the alternative for summary judgment on all counts. By Memorandum–Decision and Order filed

---

No State shall require certification, inspection, or any other approval relating to the control of emissions from any new motor vehicle or new motor vehicle engine as condition precedent to the initial retail sale, titling (if any), or registration of such motor vehicle, motor vehicle engine, or equipment.

42 U.S.C. § 7543.

**3.** Section 177 provides in part:
Notwithstanding section 7543(a) of this title, any State which has plan provisions approved under this part may adopt and enforce for any model year standards relating to control of emissions from new motor vehicles or new motor vehicle engines and take such other actions as are referred to in section 7543(a) of this title respecting such vehicles if—
(1) such standards are identical to the California standards for which a waiver has been granted for such model year, and
(2) California and such State adopt such standards at least two years before commencement of such model year (as determined by regulations of the Administrator).

**4.** Section 249 of the CAA creates authority in the Administrator of the Environmental Pro-

tection Agency to create a pilot program in California to test the effectiveness of "clean-fuel vehicles." 42 U.S.C. § 7589(a). Subsection (f)(1) provides in part:

Not later than 2 years after November 15, 1990, the Administrator shall promulgate regulations establishing a voluntary opt-in program under this subsection pursuant to which—
(A) clean-fuel vehicles which are required to be produced, sold, and distributed in the State of California under this section

. . . . .

may also be sold and used in other States which submit plan revisions under paragraph (2).

Id. § 7589(f)(1). Section (f)(3) provides that any qualifying State may submit a revision of their implementation plan to "provide incentives for the sale or use" of clean-fuel vehicles required to be produced and sold in California. Id. § 7589(f)(3). Section (f)(4) states that "[t]he regulations and plan revisions under paragraphs (1) and (2) shall not include any production or sales mandate for clean-fuel vehicles." Id. § 7589(f)(4).

August 5, 1997, this Court denied Plaintiffs' motion and granted Defendants' motion on all counts. *See AAMA I,* 973 F.Supp. 288 (N.D.N.Y.1997). Specifically, this Court held that (1) the claim of preemption under § 249 of the CAA, 42 U.S.C. § 7589 and the claim based on the Commerce Clause were barred by the doctrine of res judicata; (2) the due process claim was premature and Plaintiffs thus lacked standing; and (3) the ZEV sales mandate was not subject either to preemption under 209(a) or to implied preemption. *Id.*

On August 11, 1998, the Court of Appeals reversed the judgment of this Court, finding that the ZEV sales mandate was preempted by section 209(a) of the CAA and was not saved by the § 177 exception. *See AAMA II,* 152 F.3d at 200–01. Finding the issue dispositive of the action, the Second Circuit did not address the other issues presented on appeal. On November 14, 1998, this Court entered a Final Order ("Order") reflecting the Second Circuit's decision. In the Order, this Court declared that the ZEV sales mandate was preempted due to § 209(a) and § 177 of the CAA and the Supremacy Clause of the United States Constitution, and enjoined the Defendants from enforcing the applicable regulations. In addition, this Court granted judgment to the Defendants on preemption under § 249 of the CAA and dismissed the remaining claims, including the Due Process and Commerce Clause claims, without prejudice. Plaintiff AIAM then timely filed the pending motion.[5] AAMA has not moved for fees.

## II. Discussion

Section 1988(b) of Title 42 provides in relevant part:

> In any action or proceeding to enforce a provision of [section] 1983 ... of this title, ... the court, in its discretion, may allow the prevailing party, other than

the United States, a reasonable attorney's fee as part of the costs....

*Id.,* § 1988(b). Defendants do not deny that Plaintiff is a prevailing party in connection with its preemption claims, but argue that the claims are not properly brought under § 1983. In the alternative, Defendants argue that a fee award would be manifestly unjust and that this Court should therefore exercise its limited discretion to deny Plaintiff's request.

## A. Action Brought To Enforce § 1983

This Court first considers whether Plaintiffs' action is one brought to "enforce" § 1983 as required for an award pursuant to 42 U.S.C. § 1988. Section 1983 provides a cause of action to a party who is deprived of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States by one who is acting under color of state law. 42 U.S.C. § 1983. Plaintiff offers two arguments in support of its assertion that it has prevailed in an action to remedy a deprivation of rights under the "Constitution and laws" of the United States. First, it argues that its constitutional (i.e. due process and commerce clause) claims were clearly valid § 1983 claims, and that the presence of these claims supports an award of fees even though the claims were not the basis of the Plaintiff's ultimate success. Second, Plaintiff argues that its preemption claims, on which it actually prevailed, are themselves valid § 1983 claims and thus directly support an award of attorney's fees pursuant to § 1988.

### 1. Fees Based on Constitutional Claims

■■■ Plaintiff argues that its constitutional claims support an award of fees because the claims on which Plaintiff prevailed arose out of the same nucleus of operative facts. When a plaintiff prevails upon a non- § 1983 claim which is accompanied by an undecided § 1983 claim, a fee

---

5. Under Fed.R.Civ.P. 54(d)(2)(B), motions for attorneys' fees must be filed no later than 14 days after entry of judgment. Here, judgment

was entered on November 20, 1998 and Plaintiff's motion was filed on December 2, 1998.

award pursuant to § 1988 is appropriate where (1) the § 1983 claim is sufficiently "substantial" to support the invocation of federal jurisdiction; (2) it arises from the same nucleus of operative facts as the claim on which the plaintiff prevailed; and (3) it is "reasonably related to the plaintiff's ultimate success." *See Smith v. Robinson,* 468 U.S. 992, 1002, 1007, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984); *Maher v. Gagne,* 448 U.S. 122, 133 n. 15, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980); *Scurlock v. City of Lynn Haven, Fla.,* 858 F.2d 1521, 1527 (11th Cir.1988); *Seaway Drive-In, Inc. v. Township of Clay,* 791 F.2d 447, 454 (6th Cir.1986); *McDonald v. Doe,* 748 F.2d 1055, 1056 (5th Cir.1984). However, it is also "settled" that where a § 1983 claim *is* decided and the plaintiff does not prevail as to liability, the § 1983 claim may not support an award of attorney's fees. *See Raley v. Fraser,* 747 F.2d 287, 292 (5th Cir.1984) (finding an award proper only where "the court either reached and upheld, or did not reach, substantial constitutional claims" and holding that "[b]ecause the [trial] court in the instant case did reach the constitutional issue and found against the plaintiff on that claim, we cannot now say that award of such fees would have been proper."). The question before this Court is whether the constitutional claims which were dismissed by this Court and not addressed by the Second Circuit should be considered "decided" for purposes § of 1988.

The case law does not provide a clear answer to this question. It establishes that where § 1983 claims are adjudicated by a trier-of-fact in the defendant's favor, the claims may not support an award of attorney's fees. *See, e.g., Russo v. State of New York,* 672 F.2d 1014, 1022 (2d Cir. 1982) (finding that nothing justifies or requires an award of fees to a party "who lost on the constitutional claim after a plenary trial"); *McDonald v. Doe,* 748 F.2d 1055, 1056 (5th Cir.1984) (citing cases). It is also clear that a claim is "decided" where the claim was dismissed by the district judge as a matter of law

and this dismissal was subsequently affirmed on appeal. *See Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 913–14 (2d Cir.1997) (denying fees where federal claim was properly dismissed on summary judgment and plaintiff prevailed on analogous state law claim); *W.G. v. Senatore,* 18 F.3d 60, 63–64 (2d Cir.1994) (affirming dismissal of fee claim for lack of subject matter jurisdiction and affirming denial of § fees); *Mateyko v. Felix,* 924 F.2d 824, 826, 828–29 (9th Cir.1990) (finding § 1988 fees were not available where district judge properly granted direct verdict on constitutional claim).

These cases do not clearly resolve whether a claim which is dismissed by the district judge and not reviewed on appeal is considered to be "decided." However, although the question is a close one, holding such claims to be "decided" appears most consistent with existing precedent and policy.

In declining to award fees where the only fee-claim was dismissed by the district judge, the Second Circuit found "no reason to reward those plaintiffs who supplement their valid claims under the [New York Human Rights Law or "NYHRL"] with meritless claims under the [Age Discrimination Employment Act] by allowing them to circumvent the state-law rule that attorney's fees are not available under the NYHRL." *Lightfoot,* 110 F.3d at 914. Although in *Lightfoot,* the Second Circuit confirmed that the claim was properly dismissed, the policy is also applicable in cases where the claim has not been reviewed. Until the district judge's determination is reviewed and reversed, it remains the law of the case that the fee-claim is dismissed, and to assume otherwise based on plaintiff's success in another claim is to turn a blind eye to the actual status of the case.

Finally, denying fees where the fee-claim was dismissed and the appellate court declined to review the dismissal does not conflict with the underlying policy for

granting fees based on undecided constitutional claims, "the policy concern of avoiding unnecessary constitutional decisions." *Lightfoot*, 110 F.3d at 914. Given that a dismissal of the fee-claim if affirmed by the Second Circuit would clearly bar attorney's fees, it cannot be said that the Second Circuit's review is "unnecessary," at least where the district judge has actually decided the claim. It is clear that if this Court were to award fees on the basis of the constitutional claims, the defendants could appeal and seek to have the award overturned by demonstrating that the constitutional claims were properly dismissed. Such a posture would place the case in a position analogous to *W.G.* and *Mateyko, supra*. Conversely, if fees were denied on the basis of the dismissal of the constitutional claims, Plaintiff could seek relief arguing that the dismissal of the claims was erroneous. Thus, the true issue is not whether such issues may be avoided by the appellate court but whether the burden of appealing the issue lies with the Plaintiff or with the Defendants. It would be distinctly unfair to place on the Defendants the burden of appealing an issue on which they have already prevailed.[6] Therefore, because Plaintiff's constitutional claims have been decided against it, an award of attorney's fees based on such claims is inappropriate.

**** Even if the constitutional claims were considered to be "undecided" because the Second Circuit declined to address them, fees based on such claims would still be inappropriate because they are not "reasonably related to the plaintiff's success." The "reasonable relation requirement is satisfied when, had the fee claim been addressed and plaintiff prevailed on it, plaintiff would have been entitled to the same relief he received absent consideration of the fee claim." *Seaway Drive–In, Inc.*, 791 F.2d at 454. Here, through Plaintiff's statutory claims, it has obtained an injunction against the ZEV sales mandate based on a finding that the mandate is not identical to the standards in California. This is a far narrower form of relief than Plaintiff sought under its constitutional claims, which would have resulted in the sales mandate being declared unconstitutional and hence illegal regardless of what regulatory standards and procedures were in place in California. The distinction is particularly noteworthy given that California has not permanently abandoned its sales mandate, but merely put off its imposition until the year 2003. *See* Appendix to Def.Mem. of Law In Opposition

---

6. It is particularly appropriate to consider the due process and commerce clause claims decided given the grounds of the dismissal. The due process claim was dismissed for lack of standing, a jurisdiction requirement. *AAMA I*, 973 F.Supp. at 303. The Second Circuit has specifically held that "[w]here there is no subject matter jurisdiction to proceed with the substantive claim, as a matter of law, ('[t]hat lack of jurisdiction bar[s] an award of attorneys fees under section 1988.')" *W.G. v. Senatore*, 18 F.3d 60, 64 (2d Cir.1994). Further, " '[w]ithout jurisdiction the court cannot proceed at all in any case. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the case.' " *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 118 S.Ct. 1003, 1012, 140 L.Ed.2d 210 (1998) (quoting *Ex parte McCardle*, 74 U.S. 506, 7 Wall. 506, 514, 19 L.Ed. 264 (1868)). Thus, having determined that it has no power to adjudicate the claim, the Court is a *fortiori* without power to assume that Plaintiff has prevailed on the claim.

The commerce clause claim was dismissed on the grounds of res judicata. Although this does not present the same jurisdictional concerns, it does further support the conclusion that the claim has been decided on the merits against the Plaintiff. Res judicata "provides that when a final judgment has been entered on the merits of the case, [i]t is a finality as to the claim...." *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 90 (2d Cir.1997) (internal quotations and citation omitted). In this case, this Court found that the Second Circuit had already decided Plaintiff's claim in another, earlier action. *See AAMA I*, 973 F.Supp. at 302. The conclusion that the Second Circuit has previously found a claim without merit in another action undermines any inference of merit based solely on the Second Circuit's silence in *this* action.

To Fees, McCarthy Aff. at 9. Hence, Plaintiff has clearly not obtained the same relief under its non-fee claims that it would have obtained under its fee claims, and an award of fees based on success on the non-fee claims must be denied.

### 2. May Plaintiff Enforce §§ 209(a) and 177 Under § 1983

■ The next question to consider is whether Plaintiff's claims based on §§ 209(a) and 177 of the CAA, on which it unquestionably prevailed, are valid § 1983 claims. It is first noted that the Second Circuit has already determined by implication that Plaintiff's §§ 209 and 177 preemption claims are validly brought under § 1983, and that this Court is thus bound to the rule under the "law of the case" doctrine. "The doctrine the law of the case 'applies to issues that have been decided either expressly or by necessary implication.'" *DeWeerth v. Baldinger*, 38 F.3d 1266, 1271 (2d Cir.1994) (quoting *Doe v. New York City Dep't of Social Servs.*, 709 F.2d 782, 788 (2d Cir.), *cert. denied*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983)). One application of this doctrine is that "issues considered and disposed of by an appellate court on appeal cannot thereafter be altered by a district court." *Panama Processes, S.A. v. Cities Serv. Co.*, 789 F.2d 991, 994 (2d Cir.1986); *see also* 18 James Wm. Moore, MOORE'S FEDERAL PRACTICE, ¶ 134.21[1] at 134–46 (3d ed. 1997) ("Lower courts are required to follow the mandate of a higher court after remand on appeal. . . .").

Here, although the Plaintiff's preemption claims were brought pursuant to both 42 U.S.C. § 1983 and 42 U.S.C. § 7604, the parties have not disputed that Plaintiff's § 7604 claim is invalid, if only because of Plaintiff's failure to follow the procedural requirements of § 7604, as this Court expressly noted in its decision. *See AAMA I*, 973 F.Supp. at 298. Thus, the only claim before the Second Circuit was the § 1983 claim, and the Second Circuit's ruling for the Plaintiff necessarily implies that the § 1983 claim was valid. Accordingly, under the law of the case, this Court is bound to that determination.

■ However, even if this Court were to consider the issue de novo, it would still conclude that Plaintiff's §§ 209 and 177 preemption claims may be brought pursuant to 42 U.S.C. § 1983. It is well-established that in addition to providing a cause of action for violation of constitutional rights, § 1983 "safeguards certain rights conferred by federal statutes." *Blessing v. Freestone*, 520 U.S. 329, 339–40, 117 S.Ct. 1353, 1359, 137 L.Ed.2d 569 (1997); *see also Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) ("[section] 1983 broadly encompasses violations of federal statutory as well as constitutional law"). However, "[i]n order to seek redress through § 1983, . . ., a plaintiff must assert the violation of a federal right, not merely a violation of a federal *law*." *Blessing, id.* (emphasis in original). The Supreme Court has established a three-part test to determine whether a particular federal statutory provision gives rise to a federal "right" as that term is meant in § 1983. "First, Congress must have intended that the provision in question benefit the plaintiff." *Id.* "Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not 'so vague and amorphous' that its enforcement would strain judicial competence." *Id.* (citation omitted). "Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory rather than precatory terms." *Id.*

If a statutory provision meets these three factors, a rebuttable presumption "that the right is enforceable under § 1983" arises. *Blessing*, at 341, 117 S.Ct. at 1360. This presumption is rebutted if the record demonstrates that Congress "specifically foreclosed a remedy under § 1983 . . . [either] expressly by forbidding recourse to § 1983 in the statute itself, or impliedly, by creating a comprehensive en-

forcement scheme that is incompatible with individual enforcement under § 1983." *Id.* (citing *Smith v. Robinson,* 468 U.S. 992, 1009, n. 9, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984)).

The Plaintiff ultimately prevailed on its claim that New York's ZEV sales mandate was preempted by § 209(a) and was not subject to the § 177 exception. Thus, the question presented is whether §§ 209(a) and 177 create a right enforceable in a § 1983 action under the three-part test outlined above and if so, whether recourse to § 1983 is nevertheless foreclosed.

■ As noted, the first question in determining whether § 209(a) creates an enforceable right is whether Congress intended the provision to benefit the Plaintiff. Courts making this determination have generally considered whether the provision at issue specified a particular party or category of parties which was to receive or otherwise enjoy the benefit of the provision. *See, e.g., Wright v. City of Roanoke Redevelopment and Housing Authority,* 479 U.S. 418, 430, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987) (finding that where provision established rent-ceiling for tenants in housing projects, "[t]he intent to benefit tenants is undeniable."); *Chan v. City of New York,* 1 F.3d 96, 104 (2d Cir.1993) (holding that provision requiring "laborers and mechanics" to be paid no less than minimum wage created right in part because "the persons whose wages are the subject of [the provision] are clearly specified"); *Lochman v. County of Charlevoix,* 94 F.3d 248, 253 (6th Cir.1996) (finding no intent by Congress to create a right where provision which prohibited the "creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States" "state[d] no more than a general proscription of certain activities" and did "not unmistakably focus on any particular class of beneficiaries who welfare Congress intended to further.").

Section 209(a) prohibits a State from imposing "any standard relating to the control of emissions from new motor vehicles," and in addition prohibits a State from requiring "certification, inspection, or any other approval relating to the control of emissions from any new motor vehicle ... as condition precedent *to the initial retail sale* ... of such motor vehicle." 42 U.S.C. § 7543 (emphasis added). Although the provision does not name a certain party, it does as a practical matter clearly single out certain classes for protection, including those engaged in the sale of new automobiles. Unlike in *Lochman,* where the prohibition against placing obstructions in navigable waterways was a prohibition against certain state actions that did not imply protection of a narrow class of individuals, § 209(a) is clearly defined to prohibit state interference with parties engaged in narrowly-specified activities.

Section 177, which provides an exception to federal preemption for those States implementing emissions standards identical to California standards, confirms that one of Congress' aims in § 209(a) and § 177 was to protect automobile manufacturers. It states that

[n]othing in this section or in subchapter II of this chapter shall be construed as authorizing any such State [implementing the California standards] to prohibit or limit, directly or indirectly, the manufacture or sale of a new motor vehicle or motor vehicle engine that is certified in California as meeting California standards, or to take any action of any kind to create, or have the effect of creating, a motor vehicle or motor vehicle engine different than a motor vehicle engine different than a motor vehicle or engine certified in California under California standards (a "third vehicle") or otherwise create such (a "third vehicle").

42 U.S.C. § 7507.

Further, legislative history makes explicit Congress's intent to benefit the manufacturers. The House Report for the

Clean Air Act Amendments of 1977, which, *inter alia*, created the § 177 exception to § 209(a) preemption, stated:

> In 1967 amendments to the Clean Air Act, Congress preempted States other than California from establishing or enforcing new motor vehicle emission standards or test procedures. Congress' concern at that time was that vehicle manufacturers not be subject to 50 different sets of requirements relating to emission controls which would unduly burden interstate commerce. In the Committee's view, that concern remains a valid one today.

H.R.Rep. No. 294, 95th Cong., 1st Sess. 309–10 (1977), *reprinted at* 1997 U.S.C.C.A.N. 1077, 1388. Based on the text and legislative history of §§ 209(a) and 177, this Court agrees with the conclusion of the Chief Judge of this District that

> Congress sought to permit state regulation of new motor vehicle emissions. However, in doing so Congress expressed a clear intent to protect motor vehicle manufacturers from the undue burden of complying with more than two different regulatory schemes.

*Motor Vehicle Mfrs. v. NYS Dept. of Env. Cons.*, 810 F.Supp. 1331, 1338–39 (N.D.N.Y.), *modified on other grounds*, 831 F.Supp. 57 (N.D.N.Y.1993), *aff'd in part, rev'd in part*, 17 F.3d 521 (2d Cir.), *on remand*, 869 F.Supp. 1012 (N.D.N.Y. 1994), *aff'd*, 79 F.3d 1298 (2d Cir.1996). A Congressional intent to benefit Plaintiff is therefore sufficiently demonstrated to satisfy the first prong of the "enforceable right" test.

The remaining two prongs are also clearly established. First, the right created by § 209(a)'s prohibition is demonstrably not so vague and amorphous that its enforcement will strain judicial competence. This right is a prohibition on the imposition of a third set of "standards relating to the control of emissions" on, *inter alia*, automobile manufacturers, *see* 42 U.S.C. §§ 7543(a), 7507, and enforcement has been achieved without any un-

usual strain. The Second Circuit, in its review of this Court's decision, found the interpretation of "standards relating to the control of emissions" relatively straightforward. *See American Auto. Mfrs. Ass'n II*, 152 F.3d at 200 (holding that "standards relating to the control of emissions" refers to "regulatory measures intended to lower the level of auto emissions. . . ."). Further, the court, while acknowledging that applying its interpretation might not always be a simple matter, found it "relatively easy ... in this matter." *Id. But see American Auto. Mfrs. Assoc. v. Mass. Dept. of Environ. Protection*, 163 F.3d 74, 83 (finding § 177 identicalness requirement "lends itself to competing interpretations").

It is also apparent that the right is phrased in mandatory language, the third requirement of a statutory "right" enforceable under § 1983. Section 209(a)'s preemption of state regulation does not give the States any discretion to engage in the prohibited behavior outside of the narrowly and objectively defined exception in § 177. Further, this exception itself includes language which reiterates the limited nature of the States' freedom to impose emission standards. 42 U.S.C. § 7507. Thus, the presumption is raised that §§ 209(a) and 177 create a right against state regulation in the specified area which is enforceable in a § 1983 action.

It must now be determined if Congress intended to foreclose a § 1983 remedy for violations of that right. A court should not "lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy for the deprivation of a federal secured right." *Wright*, 479 U.S. at 423–24, 107 S.Ct. 766 (citation and internal quotations omitted). "The burden is on the [Defendant] to show 'by express provision or other specific evidence from the statute itself that Congress intended to foreclose such private enforcement.'" *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 520–21, 110 S.Ct. 2510, 110 L.Ed.2d

455 (1990) (quoting *Wright,* 479 U.S. at 423, 107 S.Ct. 766); *see also Shing Chan v. City of New York,* 803 F.Supp. 710, 726 (S.D.N.Y.1992) ("there is a heavy burden on a defendant to demonstrate that Congress intended to foreclose a § 1983 remedy.").

"In the absence of [an express foreclosure], we have found private enforcement foreclosed only when the statute itself creates a remedial scheme that is 'sufficiently comprehensive ... to demonstrate congressional intent to preclude the remedy of suits under 1983.'" *Wilder,* 496 U.S. at 520–21, 110 S.Ct. 2510 (quoting *Middlesex County Sewerage Auth. v. National Sea Clammers Assn.,* 453 U.S. 1, 20, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981)). Courts intuit foreclosure based on a comprehensive remedial scheme out of the concern that parties will use the § 1983 cause of action to avoid the procedural requirements and limitations of remedies given in the statute. *See Nat'l Sea Clammers,* 453 U.S. at 20, 101 S.Ct. 2615 (holding that when "a state official is alleged to have violated a federal statute which provides its own comprehensive enforcement scheme, the requirements of that enforcement procedure may not be bypassed by bringing suit directly under § 1983.") (citation and internal quotations omitted).

In *Nat. Sea Clammers,* the Supreme Court considered whether the plaintiff could bring a § 1983 claim seeking damages for water pollution allegedly illegal under the Federal Water Pollution Control Act ("FWPCA"). The Court found that the FWPCA contained "unusually elaborate enforcement provisions, conferring authority to sue for this purpose both on government officials and private citizens." *Nat. Sea Clammers,* 453 U.S. at 13, 101 S.Ct. 2615. It concluded that this scheme was sufficient to infer Congress's intent to preclude a § 1983 action: "It is hard to believe that Congress intended to preserve the § 1983 right of action when it created so many specific statutory remedies, in-

cluding the two citizen-suit provisions." *Id.* at 20, 101 S.Ct. 2615.

The statute at issue in this case has many of the same enforcement measures as the FWPCA. Indeed, it contains a citizen suit provision virtually identical to one of the provisions which the Supreme Court in *Nat'l Sea Clammers* found critical to its decision. *Compare* 42 U.S.C. § 7604(CAA) with 33 U.S.C. § 1365 (FWPCA). This similarity has led at least one court to conclude that a § 1983 action is precluded under the CAA. *See Reeger v. Mill Service, Inc.,* 593 F.Supp. 360, 362 (W.D.Pa.1984).

However, both *Nat'l Sea Clammers* and *Reeger* are distinguishable in one critical respect. Those cases each involved a plaintiff attempting to enforce a right for which Congress had provided specific remedies in the statute which gave rise to the right. Thus, allowing parties to enforce those rights through access to § 1983 would have indeed bypassed remedies available to them under the statutes.

Here, in contrast, no remedy was provided in the CAA for the enforcement of Plaintiff's § 209 right. The CAA does provide a citizen suit provision, 42 U.S.C. § 7604; indeed, Plaintiff relied upon it in bringing this action. However, this Court agrees with the assessment of the Defendants that the preemption claim does not fit within the terms of the provision. *See* Def. Memorandum In Support of Motion To Dismiss at 23 n. 5. The provision provides in relevant part that a person may commence an action "against any person ... who is alleged to have violated ... or to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation (3)27" 42 U.S.C. § 7604(a)(1). An "emission standard or limitation" is defined as "a schedule or timetable of compliance, emission limitation, standard of performance or emission standard ... which is in effect under this chapter ... or under an appli-

cable implementation plan." 42 U.S.C. § 7604(f)(1). Thus, "[t]o state a claim under the citizen suit provision a plaintiff must allege a violation of 'a specific strategy or commitment in the [State Implementation Plan ("SIP") ] and describe, with some particularity, the respects in which compliance with the provision is deficient.'" *Coalition Against Columbus Center v. City of New York*, 967 F.2d 764, 769 (2d Cir.1992).

Here, Plaintiff does not sue based on an alleged violation of an SIP or a failure to comply with an order of the Administrator regarding a schedule of compliance; indeed, Plaintiff does not allege a violation of an order of the Administrator or a State, but of a term of the CAA itself. Analogously, the Second Circuit has repeatedly held that a person may not bring a suit under § 7604 to enforce an air quality standard established in the Clean Air Act. *Id.; see also Conservation Law Foundation, Inc. v. Busey*, 79 F.3d 1250, 1258 (1st Cir.1996) ("suits can be brought to enforce specific measures, strategies, or commitments designed to ensure compliance with the [National Ambient Air Quality Standards ("NAAQS") issued by the EPA pursuant to the terms of the CAA], but not to enforce the NAAQS directly."). Further, the provision establishes only a preemption of state action, not a schedule or timetable of compliance. Thus, § 7604 provides no statutory remedy which would be bypassed by allowing enforcement through § 1983. The remedies are therefore not so comprehensive that this Court can infer Congress's intent to preclude reliance on § 1983. *See Conservation Law Foundation, Inc.*, 79 F.3d at 1261 (finding that suit under APA was not implicitly precluded by the CAA in part because "the APA provides a right of review of agency decisions precisely where a plaintiff's claim is not covered by the citizen suit provision of the substantive act.").

In sum, Plaintiff validly brought its causes of action seeking to enforce §§ 209 and 177 of the CAA as claims under § 1983 and is properly considered a prevailing party in a § 1983 action.

### B. Is An Award of Fees Manifestly Unjust

■ Where a Plaintiff has prevailed on a § 1983 claim, the plaintiff should " 'ordinarily recover an attorney's fee unless special circumstances would render such a fee unjust.' " *Blanchard v. Bergeron*, 489 U.S. 87, 89 n. 1, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989) (quoting *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968)); *see also New York State Nat'l Org. For Women v. Terry*, 159 F.3d 86, 97 (2d Cir.1998). Defendants argue that an award in the circumstances of this case would be unjust. However, they have not presented any special circumstances which justify this conclusion.

They assert that, in previous litigation with Plaintiff, they have prevailed but did not ask for attorney's fees. However, prevailing *Defendants* are generally not entitled to such fees. *See LeBlanc–Sternberg v. Fletcher*, 143 F.3d 765, 770 (2d Cir.1998) ("In order to avoid chilling the initiation and prosecution of meritorious civil rights actions, fees are not to be awarded to a prevailing defendant unless the plaintiff's action was 'frivolous, unreasonable or groundless, or ... the plaintiff continued to litigate after it clearly became so.' ") (citation omitted).[7] Further, Defendants' unilateral decision not to pursue fees in another litigation in no way renders Plaintiff's request for fees in this litigation unjust.

Defendants also assert that the question of whether a ZEV sales mandate is preempted by § 209 of the CAA is a close question, relying on *American Auto. Mfrs. Assoc. v. Mass. Dept. of Environ. Protection*, 163 F.3d 74 (1st Cir.1998). That

---

**7.** While this severely skewed standard for the award of attorney's fees could perhaps be considered unjust, it cannot be considered a special circumstance.

case, while concluding that ZEV mandates were enforcement measures subject to § 209(a) preemption, also found that " § 177 could be read to protect from preemption both standards and enforcement procedures [when only] the standards (independently of the enforcement procedures) are identical to California standards." *Id.* at 83. Finding that "sections 177 and 209(a) lend themselves to competing interpretations," *id.*, the First Circuit declined to decide the matter, preferring to obtain in the first instance the view of the Environmental Protection Agency. *Id.*

 Defendants argue that it would be unjust to award fees in a case involving such a close legal question. However, Defendants are again confusing the standard under which fees are awarded. While prevailing defendants must show that the plaintiff's case was frivolous in order to obtain fees, prevailing plaintiffs need not show that Defendant's position was frivolous. Nor is it relevant that plaintiffs similarly-situated to the Defendants have not prevailed in other circuits, since this does not in any way undermine the binding force of a holding in this circuit. *Cf. N.Y. State Nat'l Org. For Women,* 159 F.3d at 97 (finding that "a final judgment confirming plaintiff's status as the prevailing party followed by a Supreme Court decision in another case invalidating the theory on which plaintiffs prevailed ... might make unjust the subsequent award of attorney's fees to plaintiffs who would no longer be entitled to prevail on their theory...."). This Court concludes that Plaintiff is entitled to attorney's fees under § 1988.[8]

Accordingly, it is hereby

ORDERED that Plaintiff's motion for attorney's fees is GRANTED. Plaintiff is directed to file within twenty-one (21) days of the filing of this decision papers enabling this Court to determine the amount of such fees; and Defendants may file within thirty-five (35) days of the filing of this decision papers in opposition.

It is further ORDERED that the Clerk of the court shall serve a copy of this order on all parties and amicus curiae by regular mail.

IT IS SO ORDERED.

---

8. The issue of a state's immunity to suit in federal court under the Eleventh Amendment was not raised by the parties. This Court briefly notes that the Eleventh Amendment is no bar. Where an action is brought against an official in his official capacity, as in this case, the Eleventh Amendment is a bar to retroactive monetary relief but not to prospective relief. *See New York City Health & Hospitals Corp. v. Perales,* 50 F.3d 129, 133 (2d Cir.1995). The Second Circuit has also stated the following: "Nor does the Amendment bar certain monetary awards, like attorney's fees or fines, which are matters ancillary to a grant of prospective relief." *Id.* Thus, the rule, however non-intuitive, is clearly established that attorney's fees are available notwithstanding Eleventh Amendment immunity.