**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NATIVE VILLAGE OF KIVALINA IRA
COUNCIL; NATIVE VILLAGE OF POINT
HOPE IRA COUNCIL; ALASKA
COMMUNITY ACTION ON TOXICS;
NORTHERN ALASKA ENVIRONMENTAL
CENTER,
                        *Petitioners,*

            v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY; LISA JACKSON,          No. 11-70776
in her official capacity as
Administrator of the U.S.                   OPINION
Environmental Protection Agency;
DENNIS MCCLARREN, in his official
capacity as Regional Administrator
for Region X of the U.S.
Environmental Protection Agency,
                        *Respondents,*

NANA REGIONAL CORPORATION;
TECK ALASKA INCORPORATED,
            *Respondents-Intervenors.*

On Petition for Review of an Order of the
United States Environmental Protection Agency
Environmental Appeals Board

Argued and Submitted
June 26, 2012—Anchorage, Alaska

Filed August 9, 2012

9021

Before: Alfred T. Goodwin, William A. Fletcher, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

**COUNSEL**

Victoria Clark, Brook Brisson, Trustees for Alaska, Anchorage, Alaska, for petitioners Native Village of Point Hope IRA

Council, Alaska Community Action on Toxics, and Northern Alaska Environmental Center.

Brent Newell (argued), Sofia Parino, Center on Race, Poverty & the Environment, San Francisco, California, for petitioner Native Village of Kivalina IRA Council.

Ignacia S. Moreno, Paul Cirino (argued), Kimberly A. Owens, Pooja S. Parikh, United States Department of Justice, Environment & Natural Resources Division, Washington, D.C., for the respondents.

Jeffrey W. Leppo (argued), Jason T. Morgan, Stoel Rives LLP, Seattle, Washington, for intervenor NANA Regional Corporation, Inc.

Eric B. Fjelstad, James N. Leik (argued), Perkins Coie LLP, Anchorage, Alaska, for intervenor Teck Alaska Incorporated.

---

**OPINION**

M. SMITH, Circuit Judge:

Petitioners Native Village of Kivalina IRA Council, Native Village of Point Hope IRA Council, Alaska Community Action on Toxics, and Northern Alaska Environmental Center (collectively, Kivalina) appeal the United States Environmental Protection Agency Environmental Appeals Board's (the EAB) order denying review of their challenges to a permit authorizing Intervenor Teck Alaska, Inc. (Teck) to discharge wastewater caused by the operation of the Red Dog Mine. The EAB concluded that Kivalina had not satisfied the procedural requirements to obtain review under 40 C.F.R. § 124.19(a) because it did not demonstrate why the United States Environmental Protection Agency's (the EPA) responses to comments were clearly erroneous or otherwise

warranted review. We agree that Kivalina did not meet the requirements of § 124.19, and we deny Kivalina's petition for review.

## FACTUAL AND PROCEDURAL BACKGROUND

The Red Dog Mine is an open pit zinc and lead mine in northwestern Alaska, operated by Teck in partnership with Intervenor NANA Regional Corporation. The mine's operations produce wastewater contaminated with metals through contact with mined materials and surfaces. After being treated, the wastewater eventually enters the Wulik River, which flows into the Chukchi Sea near the Native Village of Kivalina.

On December 5, 2008, the EPA proposed to re-issue a National Pollutant Discharge Elimination System (NPDES) permit to the Red Dog Mine and issued a draft permit for public comment. Contemporaneously, the Alaska Department of Environmental Conservation certified that the proposed activity and resulting discharges would comply with section 401 of the Clean Water Act (CWA) and Alaska Water Quality Standards.

In October 2009, the EPA completed a Final Supplemental Environmental Impact Statement and issued responses to public comments in December 2009. On January 8, 2010, the EPA issued its record of decision and final NPDES permit (the 2010 Permit.)

On February 15, 2010, Kivalina filed an administrative petition for review with the EAB, challenging many conditions of the 2010 Permit. After Kivalina filed its petition, the EPA withdrew those portions of the 2010 Permit to which most of Kivalina's objections were addressed. The EAB concluded that the EPA's withdrawal of certain effluent limitations in the 2010 Permit rendered moot the challenges to those limitations in sections II.C.1, II.C.2, and II.C.4 of Kivalina's

petition, and dismissed those sections of the petition. As a result, only section II.C.3 of Kivalina's petition remained pending before the EAB.

On November 18, 2010, the EAB handed down an order denying review of the remaining portion of Kivalina's petition. In its order, the EAB observed that section II.C.3 of Kivalina's petition consisted of only slightly more than two pages, and that Kivalina had not set forth sufficient detail about why the EPA's responses to public comments were irrelevant, erroneous, insufficient, or an abuse of discretion, as required by § 124.19(a).

On December 8, 2010, the EPA issued a final permit decision. Kivalina filed a timely petition for review on March 18, 2011.

## STANDARD OF REVIEW AND JURISDICTION

"Final agency action is reviewed under the Administrative Procedure Act, 5 U.S.C. § 706(2), and can be set aside only if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . [or] without observance of procedure required by law.' " *Anaheim Mem'l Hosp. v. Shalala*, 130 F.3d 845, 849 (9th Cir. 1997) (citation omitted). Thus, we review the EAB's procedural default ruling under the deferential standard of 5 U.S.C. § 706(2). *See id.*; *see also City of Pittsfield v. U.S. EPA*, 614 F.3d 7, 10 (1st Cir. 2010); *Mich. Dep't of Envtl. Quality v. U.S. EPA*, 318 F.3d 705, 707 (6th Cir. 2003).

We have jurisdiction pursuant to 33 U.S.C. § 1369(b)(1)(F).

## DISCUSSION

[1] "The [EAB]'s analysis of NPDES permits is guided by the preamble to the permitting regulations, which states that

the Board's power of review 'should be only sparingly exercised.' " *In re Chukchansi Gold Resort*, NPDES Appeal Nos. 08-02, 08-03, 08-04, 08-05, 2009 WL 152741, at *5 (EAB Jan. 14, 2009).

Under 40 C.F.R. § 124.19(a), a petition to the EAB for review of any condition of a permit decision must satisfy the following requirements:

> The petition shall include a statement of the reasons supporting that review, including a demonstration that any issues being raised were raised during the public comment period (including any public hearing) to the extent required by these regulations and when appropriate, a showing that the condition in question is based on:
>
> (1) A finding of fact or conclusion of law which is clearly erroneous, or
>
> (2) An exercise of discretion or an important policy consideration which the Environmental Appeals Board should, in its discretion, review.

40 C.F.R. § 124.19(a). The petitioner bears the burden of demonstrating that review is warranted. *See Citizens for Clean Air v. U.S. EPA*, 959 F.2d 839, 845 (9th Cir. 1992); *In re Cherry Berry B1-25 SWD*, UIC Appeal No. 09-02, 2010 WL 3258139, at *1 n.2 (EAB Aug. 13, 2010); *In re New England Plating Co.*, 9 E.A.D. 726, 2001 WL 328213, at *3 (EAB 2001).

**[2]** "Section 124.19(a) is admittedly not the most pellucid of regulations . . . ." *City of Pittsfield*, 614 F.3d at 12. However, "the EAB has consistently interpreted the regulation as requiring that the petitioner set forth an argument in its petition as to why the permit condition it is challenging is either based on a clearly erroneous finding of fact or conclusion of

law or raises an important policy consideration." *Id.* at 11; *see In re Chukchansi Gold Resort*, 2009 WL 152741, at *5. "The [EAB] has interpreted this requirement as mandating two things: '(1) clear identification of the conditions in the permit at issue, and (2) argument that the conditions warrant review.' " *In re Chukchansi Gold Resort*, 2009 WL 152741, at *7 (citation omitted). "Additionally, the [EAB] has repeatedly stated that the petitioner must explain why the challenged conditions merit review." *City of Pittsfield*, 614 F.3d at 11.

**[3]** Applying these principles, the EAB denies review where petitioners merely reiterate or attach comments previously submitted regarding a draft permit and do not engage the EPA's responses to those comments. *See id.*; *see also In re Cherry Berry B1-25 SWD*, 2010 WL 3258139 ("This Board has frequently stated that '[i]t is not sufficient simply to repeat objections made during the comment period; instead, a petitioner must demonstrate why the permit issuer's response to those objections is clearly erroneous or otherwise warrants review.' ") (citation omitted); *In re Chukchansi Gold Resort*, 2009 WL 152741, at *5 ("Assuming the issues have been preserved, the petitioner must then explain with sufficient specificity why a permit issuer's previous responses to those objections [raised during the public comment period on the draft permit] were clearly erroneous, an abuse of discretion, or otherwise warrant Board review.").

Kivalina does not challenge the EPA's interpretation of § 124.19(a) but rather argues that its petition meets the requirements of § 124.19(a) as the EPA interprets it. Specifically, Kivalina claims its petition sufficiently challenged three monitoring conditions in the 2010 Permit: (1) the reduction in monitoring requirements, (2) the removal of biomonitoring provisions, and (3) the EPA's failure to require third-party monitoring. We address in turn the sufficiency of each challenge under the requirements of § 124.19(a).

## A.   Reduction in Monitoring Requirements

The portion of Kivalina's petition challenging the alleged reduction in monitoring requirements consisted of the following four sentences:

> EPA's attempt to justify the reduction of monitoring and refusal to monitor compounds associated with mining activities is not supported by the plain language of the CWA, constitutes clear error and is an abuse of discretion. Section 308(a)(A) of the Act confers broad authority on EPA to require monitoring beyond the permit's effluent limitations. EPA absolutely has the authority to require monitoring of the Red Dog Mine's effluent and ambient conditions in the aquatic environment upstream and downstream of the mine, regardless of whether it is necessary to monitor compliance with permit terms. The fact that EPA has done so historically further demonstrates EPA's abuse of discretion.

Nowhere in this paragraph does Kivalina mention the EPA's responses to public comments.

In its response to public comments, the EPA (1) addressed a comment arguing that the EPA should require monitoring of additional constituents; (2) said that the 2010 Permit included all of the effluent and ambient monitoring necessary to determine compliance with permit limits; (3) noted that the Red Dog Mine had to meet certain limitations that account for toxic effects of parameters that were not necessarily limited in the 2010 Permit, and that influent monitoring was not required or necessary because such monitoring was irrelevant to determining permit compliance and effects on receiving waters; (4) stated that monitoring performed to date provided a long-term record of the background conditions throughout the watershed, and that ceasing monitoring in tributaries would not affect water quality in the streams downstream of

the mine's discharge; and (5) explained that it changed a monitoring location to the boundary of the mixing zone in the main stem of Red Dog Creek.

**[4]** As the EAB found, the EPA's responses provide a rationale for the monitoring requirements. Kivalina never addressed this rationale or argued that the EPA's reasoning was incorrect in any way. Even if Kivalina's argument that the EPA has authority to require monitoring beyond the permit's effluent limitations is correct, that is beside the point. The real question is whether the EPA properly *exercised* its authority. The EPA explained in its response to comments that requiring greater monitoring was unnecessary to ensure compliance with the 2010 Permit's conditions. Kivalina simply did not argue or explain why the EPA's responses were incorrect.

**[5]** We do not judge a petition based merely on its length or discourage brevity. However, § 124.19(a) clearly requires more than Kivalina provided. Its four unresponsive, conclusory sentences did not satisfy the requirements of § 124.19(a). Because Kivalina did not engage the EPA's responses to public comments, it did not meet its burden of showing that EAB review of the alleged reduction in monitoring requirements was warranted. *See City of Pittsfield*, 614 F.3d at 11; *Mich. Dep't of Envtl. Quality*, 318 F.3d at 708. Thus, we hold that the EAB did not err in declining to review Kivalina's challenge to the reduction in monitoring requirements.

## B.   Removal of Biomonitoring Provisions

Kivalina's petition also challenged the alleged removal of biomonitoring provisions, as follows:

> EPA also has authority to ensure that the mine complies with water quality standards established under Section 303, 42 U.S.C. § 1313. EPA itself concedes that the biomonitoring is not actually being reduced,

just made unenforceable under the CWA by transfer-
ring the bulk of biomonitoring requirements to the
state solid waste permit.

In its response to public comments, the EPA addressed con-
cerns that biomonitoring and bioassessment requirements
would be removed from the 2010 Permit. The EPA explained
that (1) certain bioassessment monitoring requirements were
initially required by the state in a 1998 certification, but were
not required by the state's current certification and (2) the
bioassessment requirements in the 2010 Permit were consis-
tent with the state's certification, and were intended to assure
that the conditions of the 2010 Permit protect aquatic life. The
EPA indicated that it was appropriate to follow the state's rec-
ommendations because the state initially included bioassess-
ment requirements in the certification of the 1998 permit and
has had the primary responsibility for reviewing the bioas-
sessment data collected to date. The EPA also observed that
bioassessment requirements that are included in the 2010 Per-
mit remain enforceable under both the 2010 Permit and the
CWA and explained why it had allocated the ambient bio-
monitoring requirements to the state.

**[6]** The EAB correctly found that Kivalina did not suffi-
ciently engage the EPA's response to public comments con-
cerning biomonitoring requirements. Kivalina never argued
that allocating biomonitoring to the state was inappropriate, or
that the state's bioassessment requirements were inadequate.
Kivalina's argument that the EPA has authority to ensure that
the mine complies with water quality standards is irrelevant.
The relevant issue is not whether the EPA has authority—the
EPA never denied that it did—but whether the EPA properly
exercised its authority in setting the 2010 Permit's biomoni-
toring requirements. The EPA thoroughly explained the rea-
sons behind the 2010 Permit's biomonitoring requirements.
Kivalina never challenged those reasons. Because Kivalina
did not engage the EPA's responses, the EAB did not err in
denying review of Kivalina's challenge to the alleged removal

of biomonitoring provisions. *See City of Pittsfield*, 614 F.3d at 11; *Mich. Dep't of Envtl. Quality*, 318 F.3d at 708.

## C.  Failure to Require Third-Party Monitoring

Kivalina also attempted to require third-party monitoring, as follows:

> Finally, while EPA may not compel a third-party to conduct monitoring as EPA correctly observes, EPA does have authority to mandate that the owner or operator of a point source conduct monitoring "as he may reasonably require." EPA's response to comments failed to consider its broad discretion in section 308(a)(A) of the Act, 42 U.S.C. § 1318(a)(A), to require a permittee to conduct such monitoring. Nothing in Section 308 prohibits EPA from requiring a permittee to retain and pay for an independent third-party to monitor effluent or to undertake other monitoring.

In its response to public comments, the EPA addressed whether the final permit should require "some competent, independent party" to conduct additional water quality monitoring, stream sediment sampling, flow measurement, and toxicity testing. It stated that (1) the CWA requires that permits contain self-monitoring requirements; (2) that it supplements monitoring data through inspections, but that it had no authority to require independent parties to monitor for compliance with a permit; (3) that the permittee is required to certify the validity of its sampling results; and (4) that the EPA and the state conduct periodic NPDES compliance inspections at the site. The EPA also acknowledged Teck's past violations and the EPA's enforcement actions.

**[7]** The EAB correctly found that Kivalina did not adequately address the EPA's responses about the sufficiency of self-monitoring coupled with periodic inspections. Kivalina

never addressed the EPA's explanation that self-monitoring and periodic inspections by federal and state authorities would be sufficient to ensure permit compliance by Teck, despite the EPA's awareness of Teck's checkered compliance history. Because Kivalina did not do so, it did not explain how the EPA's conclusion that self-monitoring was appropriate was wrong. Thus, the EAB properly declined to review Kivalina's challenge to the permit's failure to require third-party monitoring. *See City of Pittsfield*, 614 F.3d at 11; *Mich. Dep't of Envtl. Quality*, 318 F.3d at 708; *In re Cherry Berry B1-25 SWD*, 2010 WL 3258139, at *1 n.2.

## CONCLUSION

For the foregoing reasons, we deny Kivalina's petition for review.

**DENIED.**